In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3649

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DEVIN JACOB JOHNSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:12-cr-40071-JES-JAG-1 — **James E. Shadid**, *Chief Judge.*

ARGUED MAY 29, 2014 — DECIDED AUGUST 27, 2014

Before BAUER, KANNE, and SYKES, *Circuit Judges.*

BAUER, *Circuit Judge.* This is a direct appeal of a criminal sentence against defendant-appellant Devin Johnson ("Johnson") for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Johnson presents two challenges in this appeal. First, Johnson argues that the district court erroneously applied a four-level enhancement to his sentence under § 2K2.1(b)(6)(B) for possessing a firearm on another's property in connection with another felony. Second, Johnson

argues that the court improperly imposed additional super-
vised release conditions in its written amended judgment that
were not announced orally at his sentencing hearing. For the
following reasons, we affirm the district court's imposition of
a four-level enhancement to Johnson's sentence and reverse
and remand that part of the sentence imposing conditions that
were not orally announced at Johnson's sentencing hearing
and direct the district court to clarify Johnson's conditions for
supervised release.

## I. BACKGROUND

On August 12, 2012, Johnson and his girlfriend Alisha
Johnson ("Alisha")[1] were at a family barbeque at Alisha's
parents' home in Rock Island, Illinois. Also present at the
barbeque were Alisha's parents Alton Hunter ("Hunter") and
Antoinette Johnson ("Antoinette"), Alisha's sister Annette
Johnson ("Annette"), and several of Alisha's and Annette's
children. At some point in the evening, a verbal argument
erupted among Alisha, Annette, and Hunter regarding
laundry. Johnson attempted to interject himself into the
argument, at which point Hunter told Johnson to stay out of it;
that the issue was a family matter that did not concern him.
Hunter asked Alisha to take the laundry and leave; Johnson
and Alisha then left the house.

Several hours later, Hunter, Antoinette, and Annette heard
a knock on a window of the house and a voice say, "Come
outside." The three went to the back door and observed Alisha

---

[1] Although they share the same last name, Alisha and Johnson are not
related.

in the doorway, another man in the alley beyond the yard, and Johnson. Johnson was wearing black clothing, dark gloves, and pointing a black handgun directly at Hunter. Antoinette went back into the house to call the police, informing them that Johnson was at her home wearing black gloves, a black shirt, and a black baseball hat and that he had a black gun. Hunter calmly told Johnson to leave and said, "You going to shoot me, shoot me." Johnson chose to leave, going back to the alley with Alisha and leaving in a red SUV.

Officers arrived at Hunter's home and searched the alley. They discovered an Intratec TEC-9 handgun, its loaded high-capacity magazine, and a dark work glove a short distance from Hunter's house. Shortly thereafter, police stopped the vehicle in which Johnson, Alisha, and the other man were riding. Johnson was charged in a single-count indictment for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Johnson pleaded not guilty.

At trial, the government called several witnesses including Hunter, Antoinette, and Officers Eugenio Barrera ("Officer Barrera") and Scott Gable ("Officer Gable") of the Rock Island Police Department. Officer Barrera testified that he was on duty on August 12, 2012, when he received a call from a dispatcher that there was a man with a gun at Hunter's address. When he arrived, Antoinette told Officer Barrera that Johnson left in a red SUV. Officer Barrera and his partner searched the alley behind Hunter's home and discovered a brown work glove and a stray merchandise tag approximately 100 meters from the residence. He then found a gun clip and a TEC-9 firearm with an obliterated serial number. The gun did not have weather damage. Officer Barrera also identified the

glove he recovered from the alley, the gun clip and ammunition, the TEC-9 firearm, and a second glove recovered from the red SUV that he saw after returning to the Rock Island County Jail.

Officer Gable testified that he was working on August 12, 2012, when he received a call from dispatch identifying a fleeing suspect as Devin Johnson, that he had a black gun, and that he left the scene in a red truck. A subsequent update informed Officer Gable that the vehicle was a red Chevy Blazer type vehicle. Not long after the call from dispatch, Officer Gable saw a vehicle matching that description and pulled it over. Inside he discovered Johnson, Alisha, and another man Antonio Metcalf. Officer Gable testified that he observed marijuana in the vehicle. Johnson admitted to Officer Gable that he owned the drugs and was arrested. With Alisha's consent, Officer Gable searched the vehicle and found one dark work glove.

The government then called Antoinette who testified that her family was having a barbeque in their backyard when an argument began regarding Alisha's children's clothes. Antoinette stated that Hunter told Alisha to take the clothes and leave. A while later, Antoinette heard a knock on the living room window and a voice say, "Come outside." When she followed Hunter into the backyard, Antoinette saw Johnson with a black gun in his hand pointed at her husband and ran inside to call police.

Hunter then testified, consistent with his wife, about the argument that occurred and that he told Alisha to leave. Hunter said he watched Alisha and Johnson get into their car

and drive away. Later, after hearing a knock on the window, Hunter said he went out the back door to see Johnson wearing dark gloves and pointing a long, black gun at him. Hunter testified that he told Johnson to "put the gun down" and "you going to shoot me, shoot me." Although unable to identify the gun at trial, Hunter identified Johnson and testified that he had known Johnson for fifteen to twenty years. After a three-day trial, a jury found Johnson guilty as charged.

At Johnson's sentencing hearing, the district court found that Johnson possessed a firearm on another's property in connection with another felony, and therefore applied a four-level enhancement under § 2K2.1(b)(6)(B) ("If the defendant … [u]sed or possessed any firearm or ammunition in connection with another felony offense … increase by 4 levels."). The court found that Johnson committed the underlying felony offense of Aggravated Unlawful Use of a Weapon (AUUW). In relevant part, the AUUW statute states:

> (a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:
>
>> (1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person, except when … on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; and
>>
>> (3) One of the following factors is present:

(H) the person possessing the weapon was engaged in the commission or attempted commission of a misdemeanor involving the use or threat of violence against the person or property of another.

720 ILCS 5/24-1.6(a)(1), (a)(3)(H).

With the four-level enhancement, Johnson's Guidelines range was 135 to 168 months' imprisonment; without the enhancement, his Guidelines range was 92 to 115 months' imprisonment. For violations of § 922(g), the criminal code provides a ten-year (120-month) maximum penalty. 18 U.S.C. § 924(a)(2).

At the sentencing hearing, the court listened to both sides' arguments involving the various factors under 18 U.S.C. § 3553. Johnson's counsel also acknowledged that Johnson had issues with his mental health and substance abuse. Counsel requested that Johnson receive "a comprehensive medical and psychiatric evaluation" by the Bureau of Prisons and that he participate in a drug and alcohol treatment program while incarcerated.

Relying on the factors under § 3553, the Presentence Report prepared by the probation office, the severity of Johnson's offense, the need to protect the public and deter others, and Johnson's "unbroken chain of criminal behavior," the court determined that an appropriate sentence would be close to the ten-year maximum. The court chose a sentence of 108 months' imprisonment, a sentence in the middle of the appropriate Guidelines range had the court not imposed the four-level

enhancement. With the enhancement, Johnson's sentence was well below the Guidelines range. The court noted that:

> [T]he thing that really aggravates [the offense] is it wasn't a situation where Mr. Johnson pulled a gun out right then and there in the middle of this heated argument. That argument was diffused and resolved and the parties believe Mr. Johnson is gone for a period of a couple of hours, I believe. Then he comes back. He came back with a gun … . And he didn't just get any gun, he had a TEC-9 fully loaded … . That's not heat of the moment … he made that decision after being given the opportunity to deliberate and think about it. He decided the way to handle that was to go and get a gun. Something in his criminal history demonstrates, he is pretty fond of doing.

Finally, the court imposed a three-year term of supervised release. The court orally announced the following conditions:

> While on supervised release, not commit another federal, state or local crime.

> Not possess a controlled substance.

> Submit to drug tests as directed.

> Cooperate in the collection of DNA as directed.

> Not possess a firearm, ammunition or destructive device or other dangerous weapon.

> In addition, participate in psychiatric services or program of mental health counseling as directed.

> Refrain from the use of alcohol.

Not purchase, possess, use, distribute or administer any
controlled substance except as prescribed by a physi-
cian.

The court found that Johnson did not have the ability to pay
a fine, so no fine was imposed. No "standard conditions" were
adopted by the court at sentencing and the court did not state
that it was adopting the conditions imposed in the Presentence
Report.

The district court entered a written judgment on Novem-
ber 26, 2013, and an amended judgment the next day. Aside
from mistakenly stating that Johnson pleaded guilty, the
original and amended judgments are identical. The written
judgment states that Johnson "must comply with the standard
conditions that have been adopted by this court as well as any
additional conditions on the attached page." The judgment
listed nineteen conditions for supervised release, two special
conditions, and required Johnson to pay an assessment of $100.
The first six conditions stated:

The defendant shall not commit another federal, state or
local crime.

The defendant shall not unlawfully possess a controlled
substance. The defendant shall refrain from any unlaw-
ful use of a controlled substance. The defendant shall
submit to one drug test within 15 days of release from
imprisonment and at least two periodic drug tests
thereafter, as determined by the court.

The defendant shall not possess a firearm, ammunition,
destructive device, or any other dangerous weapon.

The defendant shall cooperate in the collection of DNA as directed by the probation officer.

The judgment then listed thirteen "standard conditions of supervision," which are:

(1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

(2) the defendant shall report to the probation officer in the manner and frequency directed by the court or probation officer;

(3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

(4) the defendant shall support his or her dependants and meet other family responsibilities;

(5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

(6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

(7) the defendant shall refrain from any use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

(8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

(9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

(10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

(11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

(12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

(13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

The two "special conditions of supervision" state:

> 1. You shall participate in psychiatric services and/or a program of mental health counseling/treatment as directed by the probation officer and shall take any and all prescribed medications as directed by the treatment providers. You shall pay for these services as directed by the probation officer.

> 2. You shall refrain from any use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or mood altering substance, or any paraphernalia related to any controlled substance or mood altering substance, except as prescribed by a physician. You shall, at the direction of the probation officer, participate in a program for substance abuse treatment including not more that six tests per month to determine whether you have used controlled substances and or alcohol. You shall pay for these services as directed by the probation office.

## II. DISCUSSION

### A. Four-Level Enhancement Pursuant to § 2K2.1(b)(6)(B)

We review *de novo* whether the facts are sufficient to support an enhancement under the Guidelines. *United States v. Pabey*, 664 F.3d 1084, 1094 (7th Cir. 2011). The district court's factual determinations are reviewed for clear error. *United States v. Walsh*, 723 F.3d 802, 807 (7th Cir. 2013). We will reverse a district court's application of an enhancement only if a

review of the evidence leaves us with "the definite and firm conviction that a mistake has been made." *United States v. Johnson,* 489 F.3d 794, 796 (7th Cir. 2007).

Johnson argues that the four-level enhancement should not apply because the government did not present sufficient evidence to prove a violation of the AUUW statute. Johnson contends that the government failed to prove that he was not an invitee on Hunter's property or that he committed either assault or battery to satisfy the requirements of subsection (H) of the AUUW statute. We find that the government met its burden of proof and the court did not clearly err in its imposition of the four-level enhancement at sentencing.

### 1. Government Sufficiently Proved that Johnson was Not an Invitee

The proof necessary for a conviction is beyond a reasonable doubt; the proof necessary for a sentence enhancement is only by a preponderance of the evidence. *United States v. Tapia,* 610 F.3d 505, 513 (7th Cir. 2010); *United States v. Wyatt,* 102 F.3d 241, 246 (7th Cir. 1996).

Johnson claims that the government failed to prove that he does not fall within an exception to the AUUW statute that provides the defendant has not violated the statute if he possessed a gun "on the land or in the legal dwelling of another person *as an invitee with that person's permission*… ." 720 ILCS 5/24-1.6(a)(1) (emphasis added). While the court did not explicitly make a finding that Johnson was no longer an invitee when he left Hunter's property with Alisha, Johnson did not raise the invitee issue before the trial court. Johnson did, however, appear to contend that he falls within the invitee

exception to the AUUW statute because "[t]here was no evidence that Mr. Johnson was not allowed to come back to the property to see any of the lawful residents." Regardless, the only reasonable inference to be made from the circumstances is that Johnson was not an invitee with permission when he returned to Hunter's property with a gun.

In *People v. Aguilar*, 944 N.E.2d 816 (Ill. App. Ct. 2011) (*rev'd on other grounds*), the court explained that the invitee exception to the AUUW statute applies exclusively to individuals with specific "'permission' to carry a handgun" on the premises. *Id*. at 821. After interjecting himself into a family argument that did not concern him, Johnson and Alisha left Hunter's house after being explicitly told to leave. No evidence indicates that Hunter gave Johnson permission to return to his property, particularly with a firearm.

The court made such findings when it discussed the government's evidence. The court described how after Hunter exited the back door and found himself staring down the barrel of Johnson's gun, he "chased Mr. Johnson pretty much off his property. Told him go ahead and shoot me if you are going to. Otherwise, get out of here." While lacking the precise language of an "invitee without permission," it is evident from the record, and the court found, that Johnson was not given permission to reenter Hunter's premises and certainly not while brandishing a firearm. Moreover, Antoinette immediately ran back into the house to call the police when she saw Johnson in the backyard with a gun pointed at her husband; another indication that the gun-wielding Johnson was not on their property with permission.

**2. Government Sufficiently Proved that Johnson Committed Assault**

While the government made reference to both assault and battery, the record makes evident that the district court focused its findings on assault. We will do the same here.

The predicate misdemeanor for Johnson's violation of the AUUW statute was aggravated assault. Under Illinois law, the Class C misdemeanor of assault occurs "when, without lawful authority, [the defendant] knowingly engages in conduct which places another in reasonable apprehension of receiving a battery." 720 ILCS 5/12-1(a), (b). When the assault is committed with a deadly weapon, as it was here, the offense is the Class A misdemeanor of aggravated assault. 720 ILCS 5/12-2(c)(1). Under Illinois law, whether an individual had a reasonable apprehension of receiving battery is a question of fact. *In re Gino W.*, 822 N.E.2d 592, 594 (Ill. 2005).

The district court found that when Johnson returned to Hunter's property uninvited and pointed a loaded gun at him in an attempt to threaten him, his conduct constituted the misdemeanor of aggravated assault, rendering his actions a violation of the AUUW statute. Johnson relies on the district court's comments at his sentencing hearing to claim that the government did not prove the necessary elements of assault. In explaining why the government had met its burden, the court stated:

> I think the irony of this—and I'm not sure this is a factor or not, where a person had to feel a perceived threat. It appeared to me from the facts and from Mr. Hunter's testimony that he was clearly—any time a person

would pull a gun, I would assume that you're being threatened. But it didn't seem that Mr. Hunter was affected. In other words, he chased Mr. Johnson pretty much off his property. Told him go ahead and shoot me if you're going to. Otherwise, get out of here. This is none of your business. This is a family issue.

Based on these statements, Johnson contends that Hunter lacked the required apprehension of battery required for a charge of assault.

In support of the court's finding, the government presented evidence of Hunter's trial testimony, the AUUW statute, and the definition of assault. While it may have appeared that Hunter was unaffected by Johnson's confrontation, he testified that staring down the barrel of a gun was a stressful situation and clearly recognized that he *could* be shot. Assault does not require actual fear on the part of the victim, but simply the reasonable apprehension of the defendant's ability to inflict imminent bodily harm upon him. In other words, simply because Hunter did not act fearful when Johnson pointed the gun at him does not mean that Hunter did not appreciate the risk of harm that could be inflicted upon him. *See, e.g., People v. Alexander*, 350 N.E.2d 144 (Ill. 1976) (fact finder may infer a reasonable apprehension of battery from the facts of the case). Furthermore, the reasonable apprehension of battery required for assault is an objective standard, or "one which would normally be aroused in the mind of a reasonable person" in those circumstances. *In Interest of C.L.*, 534 N.E.2d 1330, 1334 (Ill. App. Ct. 1989); *In re Gino W.*, 822 N.E.2d at 595 ("[C]ourts have affirmed a defendant's conviction of aggravated assault when the victim testified that the defendant's

conduct 'was enough to scare somebody,' but not necessarily the victim."). The court's statement about the "irony" that Hunter did not seem affected is irrelevant, and it did not err in finding that a reasonable person in Hunter's position would have an apprehension of battery.

The government carried its burden of proving by a preponderance of the evidence that Johnson possessed a firearm in connection to another felony. The court made sufficient findings to subject Johnson to the four-level enhancement under § 2K2.1(b)(6)(B).

Finally, Johnson argues that *People v. Aguilar*, 2 N.E.3d 321 (Ill. 2013) invalidates the AUUW statute. This is incorrect. *Aguilar* invalidated only one part of the statute, irrelevant to this case, which prohibited a person from carrying a firearm in public or on another's property if the gun was "uncased, loaded and immediately accessible at the time of the offense." 720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d); *Aguilar*, 2 N.E.3d at 328 n.3 ("We make no finding, express or implied, with respect to the constitutionality or unconstitutionality of any other section or subsection of the AUUW statute."). The provision at issue in this appeal, (a)(3)(H), has never been invalidated or found to be unconstitutional.

## B. Conditions of Supervised Release

Johnson contends that any additional conditions provided in the court's written judgment should be vacated because they conflict with the unambiguous oral pronouncement of conditions at his sentencing hearing. We review a claim of an inconsistency between the oral and written judgments *de novo*, comparing the sentencing transcript with the written judgment

to determine whether an error occurred as a matter of law. *United States v. Bonanno,* 146 F.3d 502, 511 (7th Cir. 1998).

### 1. Written Conditions of Supervised Release Not Announced Orally Must Be Vacated

It is well-established in this circuit that when there is a conflict between an oral and later written sentence, the oral judgment pronounced from the bench controls. *United States v. Alburay*, 415 F.3d 782, 788 (7th Cir. 2005). "[If] the oral version is unambiguous, there is no need to look beyond the oral version for any clarification from the written version … . The written version is thus a nullity, not requiring further discussion" *Id*. Here, the district court unambiguously announced several specific conditions of supervised release at Johnson's sentencing hearing and did not include any statement as to whether other standard conditions would apply. We conclude that the court exercised its discretion in selecting only some of the discretionary conditions to impose on Johnson. According to our holding in *Alburay*, any new conditions imposed in the later written judgment are inconsistent with the court's oral order and must be vacated. *Cf., Bonanno*, 146 F.3d at 512 (when the district court orally informed the defendants that "all the standard conditions of supervised release adopted by this Court" would apply, but did not enumerate those conditions until the written order, the written order was merely a clarification of the vague oral pronouncement and was not in conflict with the oral pronouncement).

Nonetheless, the district court retains the ability to modify Johnson's conditions of supervised release at any time after his sentencing hearing. *See, e.g., United States v. Adkins*, 743 F.3d

176, 196 (7th Cir. 2014). Any issues with the conditions can therefore be easily corrected upon remand.

### 2. Payment for Services and Drug Testing Should Be Contingent on Johnson's Ability to Pay and "Mood Altering Substances" is Too Vague/Over-broad

Neither the imposition of payment for psychiatric services, drug testing, and substance abuse programs nor the limitation on the use of "mood altering substances" were included in the court's oral pronouncement of Johnson's conditions of supervised release. As explained above, these conditions are therefore a nullity that should be reconsidered by the district court on remand. *United States v. Perry*, 743 F.3d 238, 242 (7th Cir. 2014); *Alburay*, 415 F.3d at 788.

However, it behooves this court to recognize our recent opinion in *United States v. Siegel*, 753 F.3d 705 (7th Cir. 2014), clarifying similar issues with the sentencing conditions at issue here. In *Siegel*, this court found that conditions prohibiting the use, purchase, or possession of "mood altering substances" was troubling due to the fact that the term is "neither defined nor self-evident." *Id*. at 713. We suggested that a preferable definition for the substances sought to be controlled would be "psychoactive substances that impair physical or mental functioning." *Id.* This more precise definition would avoid confusion over whether substances such as coffee or sugar, known to alter one's mood, are to be avoided. When imposing restrictions upon a defendant's purchase, possession, or use of such substances, we further suggested that the district court consider the particular conduct, character, criminal history, and other characteristics of the defendant as well as the

practical purpose of such restrictions in regard to criminal behavior and recidivism. *Id.* at 717.

Also, this court held a requirement that the defendant bear the costs of certain mandatory treatments, programs, or testing, without qualification, must be modified to make explicit when, and under what circumstances, the defendant is required to pay for services mandated in the conditions of supervised release. *Id*. at 714. We found that under 18 U.S.C. § 3672, the government should bear those costs if the defendant lacks the ability to pay for such treatment or programs. *Id*. We reasoned that without this rule, the defendant's supervised release may be revoked for mere inability to pay, which "would constitute imprisonment for debt." *Id*. In short, our recent holding in *Siegel* emphasized that district courts must make conditions of supervised release clear and appropriate in relation to a particular defendant.

## III. CONCLUSION

We affirm the district court's finding that Johnson violated the AUUW statute, permitting the application of a four-level Guidelines enhancement. We affirm the supervised release conditions orally pronounced by the district court at sentencing, but vacate any additional conditions provided in the written judgment with the request that the court reconsider Johnson's conditions of supervised release on remand.