In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-1648

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN W. BLOCH III,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 12-CR-2 — **Robert L. Miller, Jr.**, *Judge.*

ARGUED JANUARY 21, 2016 — DECIDED JUNE 17, 2016

Before POSNER, EASTERBROOK, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Defendant John W. Bloch III has
had three sentencing hearings in four years. He now seeks a
fourth. Bloch argues he is entitled to such relief because the
district court committed error in imposing the length and
conditions of supervised release.

The third time happens to be a charm in this instance
though, as Bloch is not entitled to another sentencing hear-

ing. The district court not only adequately explained its justi-
fication for imposing a term of supervised release, it also
adopted a "best practice" suggested by this court for provid-
ing adequate notice to defendants of proposed conditions of
supervised release and justification for the same. Therefore,
we affirm the district court's sentence.

## I.   BACKGROUND

Bloch's journey through the federal criminal system has
so far included a trial, two appeals, and three sentencings.
We first recount how his case entered into the system before
discussing these subsequent proceedings.

*A. Arrest, Indictment, Trial, and Sentencing*

In November 2011, police responded to a report of gun-
fire at an apartment belonging to Bloch's girlfriend in
Elkhart, Indiana. An obviously intoxicated Bloch greeted the
officers who had knocked on the door. The officers asked
Bloch and his girlfriend to step outside the apartment so
they could perform a sweep inside to ensure no one was
hurt. During their sweep, the officers discovered a loaded
Glock .40 caliber semi-automatic handgun, a SKS assault ri-
fle, and ammunition for the firearms near both guns.

As the officers proceeded to remove the guns and am-
munition from the apartment, Bloch objected to the officers
removing the firearms, claiming the guns belonged to him.
Bloch's status as a convicted felon made his possession of
those firearms illegal, which prompted the officers to arrest
him. Bloch continued to demand the return of his firearms,
even as the police took him to jail.

In January 2012, a grand jury returned a two-count in-
dictment against Bloch for: (1) unlawful possession of a fire-

arm by a felon in violation of 18 U.S.C. § 922(g)(1); and (2) unlawful possession of a firearm after having been convicted of a domestic-violence misdemeanor in violation of 18 U.S.C. § 922(g)(9). A jury convicted him on both counts in April 2012. Three months later, the district court sentenced Bloch to a total of 138 months' imprisonment and a 3-year term of supervised release. The district court's sentencing memorandum filed on the same day of sentencing indicates it incorporated the twenty-two conditions of supervised release contained in Bloch's presentence investigation report.

*B. First Appeal and First Resentencing*

Bloch appealed both his conviction and sentence. We upheld the jury's verdict but remanded for resentencing because his "convictions arose from the same incident of firearm possession, and the only difference between them is the disqualified class to which Bloch belonged." *United States v. Bloch*, 718 F.3d 638, 644 (7th Cir. 2013). As a result, Bloch's two § 922(g) convictions had to be merged—one conviction is vacated and merged into the other—because "a person cannot be convicted of more than one § 922(g) crime based on a single incident of possession." *Id.* at 643–44.

On remand, the district court sentenced Bloch to 120 months' imprisonment in October 2013. The district court also imposed a 3-year term of supervised release with the same conditions it imposed during Bloch's first sentencing.

*C. Bloch's Second Appeal and Second Resentencing*

Bloch again appealed, but on this occasion, he only challenged his sentence. According to Bloch, the district court miscalculated his sentencing guidelines range by determining that a battery by bodily waste conviction qualified as a

crime of violence under U.S.S.G. §§ 2K2.1(a)(1) and 4B1.2(a).
Even though Bloch had failed to object to the miscalculation,
the government agreed and joined in a motion seeking an
order vacating Bloch's sentence and a remand to the district
court so he could be resentenced. Agreeing with the gov-
ernment and Bloch, we granted the motion in December
2014 and issued an order vacating Bloch's sentence and re-
manding his case for resentencing.

Prior to Bloch's March 23, 2015, resentencing,[1] the district
court filed in the electronic docket a document captioned
"Notice of Proposed Conditions of Supervision." The docu-
ment begins by noting that "[s]entencing courts in this cir-
cuit must give advance notice of proposed supervised re-
lease conditions, and the law concerning supervised release
conditions has changed since the previous judgments in this
case." (citations omitted). The district court then stated that
it would not "re-impose the conditions originally ordered"
and proposed "the following 13 conditions, which [it] be-
lieve[d] to be less onerous than those originally imposed."
After each proposed condition, the district court provided an
explanation in italics for why it was imposing the condition.

At Bloch's second resentencing hearing, the district court
posed this question to both the government and Bloch: "did
you get a chance to review the March 18th notice of pro-
posed conditions of supervision, and, if so, do you have any
objection to any of those proposed conditions?" Both the

---

[1] The district court said during sentencing that the order was entered on
March 18, 2015, which is the date that also appears on the document it-
self; however, the electronic docket indicates the order was entered into
it on March 19, 2015.

government and Bloch acknowledged they had received and reviewed a copy of the district court's notice of proposed conditions.

Bloch objected to only one condition, the condition which required him to "permit a probation officer to meet the defendant at any time, at home or elsewhere, and shall permit confiscation of any contraband the probation officer observes in plain view" ("home-visit condition"). According to Bloch, his concern was with the word "elsewhere" and its possible infringement on the Fourth Amendment rights of people with whom he associates.

The district court attempted to allay Bloch's concern with the condition by stating the following:

> When I set forth—proposed to provide that the probation officer—that you have to permit a probation officer to meet with you at any time, at home or elsewhere, my "or elsewhere" didn't suggest people's places where you were not living. The idea was that you could—the probation officer could make you come to this building to meet with you or meet you at a Starbucks or something. I would like to maintain that option because it doesn't seem like every visit should have to be at your home. There should be home visits, but not necessarily every visit. So I guess what I would propose to do is to provide that you shall permit a probation officer to meet you at any time, at home, at the Probation Office, or at some public place, and shall permit confiscation of any contraband the probation officer observes in plain view.

Bloch responded by telling the district court that he now wanted to object to the entire condition. The district court

then stated that the "proposed change in language was simply to try to improve the comfort level for" Bloch before overruling the objection.

After the district court announced Bloch's guideline range of 84 to 105 months, it proceeded to consider the factors contained in 18 U.S.C. § 3553(a) and explain its reasoning in relation to several of those factors. Of particular note was the district court's discussion of Bloch's history, including his criminal history and the need for a sentence to protect the public from him. With regard to his history, the district court noted that Bloch had multiple felonies and "seem[ed] to be one of those people about whom the law should be most serious, as far as possessing firearms." The district court also noted that Bloch had "difficulty complying with conditions of supervision" and denied having an alcohol problem, even though his family thought otherwise.

As for the need for Bloch's sentence to protect the public from him, the district court said his extensive criminal history "suggests that [he] pose[d] a far greater risk of future criminal conduct than most defendants who pass through here do." And before stating that it planned to impose a 105-month term of imprisonment, the district court explained that "in light of [Bloch's] history of alcohol abuse and committing crimes while drinking or while having drunk," it could not risk the public's safety on the chance that Bloch's years of sobriety in prison would make him less likely to recidivate. Anything less, according to the district court, would be inappropriate in light of "the seriousness of the risk that you pose of future criminal conduct, [and] the risk of violent crime."

The district court also stated that it planned to impose a 3-year term of supervised release and to incorporate the conditions from its March 18 notice of proposed conditions of supervision. The district court then asked Bloch if he had any objections to the sentence other than his objection to the condition allowing for home visits. Bloch responded that he did not. To be sure that this was Bloch's only objection, the district court asked him to again confirm his answer, and he did. The district court then orally pronounced the sentence of 105 months' imprisonment and 3-year term of supervised release, whose conditions it incorporated by reference to the March 18 notice.

## II. ANALYSIS

In this third appeal, Bloch only challenges his term of supervised release and the conditions associated with it. According to Bloch, the district court committed procedural error when it failed to make adequate findings to support the imposition of a supervised release term. With respect to the conditions of supervised release, Bloch argues the district court committed procedural error by failing to orally pronounce all of the supervised release conditions from the bench. Bloch also presents various constitutional and substantive challenges to eight of the supervised release conditions imposed upon him.

When reviewing challenges to the term and/or conditions of supervised release, we do so with the following framework in mind:

> Under 18 U.S.C. § 3583(d), a sentencing court has discretion to impose appropriate conditions of supervised release, to the extent that such conditions (1) are reasonably related to the factors identified in

§ 3553(a), including the nature and circumstances of the offense and the history and characteristics of the defendant; (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a); and (3) are consistent with the policy statements issued by the Sentencing Commission. Policies emphasized by the Sentencing Commission include deterrence, rehabilitation, and protecting the public.

*United States v. Armour*, 804 F.3d 859, 867 (7th Cir. 2015) (quoting *United States v. Ross*, 475 F.3d 871, 873 (7th Cir. 2007)). We review Bloch's procedural challenges *de novo*. *United States v. Baker*, 755 F.3d 515, 522 (7th Cir. 2014).

Substantive challenges to conditions of supervised release have a different standard of review. We review the district court's imposition of a condition for abuse of discretion, so long as the defendant objected to it before the sentencing judge. *United States v. Poulin*, 809 F.3d 924, 930 (7th Cir. 2016). When a condition goes unchallenged though, we review the district court's imposition for plain error. *Id.*

*A. Findings to Support Supervised Release Term*

A sentencing court must follow a two-step process. "First, it must determine the defendant's sentencing range under the guidelines. Second, it must hear the arguments of the parties and conclude by making an individualized assessment of the appropriate sentence based on the [18 U.S.C.] § 3553(a) factors." *United States v. Adkins*, 743 F.3d 176, 189 (7th Cir. 2014) (citations and internal quotation marks omitted).

Bloch challenges the district court's performance of the second step here. He contends the district court committed

reversible error when it "said nothing to justify its decision to impose 3 years of supervised release." (Appellant Br. at 14.) Bloch reads our precedent as requiring a district court to provide "separate § 3553(a) justifications" for its imposition of a term of imprisonment and a term of supervised release pursuant to 18 U.S.C. § 3853(c). (Appellant Reply at 3.) From Bloch's perspective, any justification that the district court provided for its sentence during the hearing was in connection with its decision to impose a term of imprisonment, not supervised release.

We disagree. Contrary to Bloch's position, the district court was not required to provide two separate explanations, one for the term of imprisonment and one for the term of supervised release. Nothing in the statutes at issue—18 U.S.C. § 3553 and § 3583—supports Bloch's strained interpretation. Section 3553(c) states that "[t]he court, at the time of sentencing, shall state in open court the reasons for *its imposition of the particular sentence*." (emphasis added). Congress used the singular form of "sentence" because at sentencing a district court hands down only one "sentence," which can include a term of supervised release. *See United States v. Downs*, 784 F.3d 1180, 1182 (7th Cir. 2015) (recognizing that one criminal sentence can "consist[] of more than one form of punishment"); *United States v. Kappes*, 782 F.3d 828, 837 (7th Cir. 2015) ("Any term of supervised release is considered part of the overall sentence."); *Adkins*, 743 F.3d at 192 (our precedent "suggests that terms of supervised release *are* part of the sentence"). No part of § 3553(c) requires the district court to bifurcate its consideration, discussion, and evaluation of the § 3553(a) sentencing factors, which al-

so happens to include all the factors a district court must consider in imposing a term of supervised release.[2]

We have come to the same conclusion before and recognized that a district court need only provide one overarching explanation and justification—tethered, of course, to the § 3553(a) factors—for why it thinks a criminal sentence comprised of both terms of imprisonment and supervised release is appropriate. *Kappes*, 782 F.3d at 847 (calling a district court's decision "to discuss [its] reasons for imposing the sentence as a whole," including combining its explanation for "the length of custody and supervised release, consistent with the relevant § 3553(a) factors" a "reasonable choice"); *Armour*, 804 F.3d at 867–68 (rejecting defendant's argument that "his term of supervised release [was] improper because the district court gave no justification for the length of the supervised release" and explaining that "[s]upervised release is part of the sentence imposed, so the district court's justifications for imposing [a term of imprisonment] also apply to the … term of supervised release.") Adopting Bloch's interpretation would be not only impractical but inconsistent with our precedent. Indeed, we do not even require the district court to discuss any particular factors in any particular fashion when imposing a sentence of incarceration, so long

---

[2] There are only two subsections from § 3553(a) that are excluded from the list of factors the district court may consider in imposing a term of supervised release. Those subsections excluded are "the need for the sentence imposed—to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A), and "the kinds of sentences available," § 3553(a)(3). *See* § 3583(c).

as it considers them and provides an "adequate statement of reasons, consistent with § 3553(a), for thinking the sentence it selects is appropriate." *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008) (citations omitted).

Here, the district court provided ample justification for its sentence, including its imposition of a 3-year term of supervised release. The district court discussed Bloch's history, including his criminal history, and the need for Bloch's sentence to protect the public from him, which are two factors the district court had to consider in determining the appropriate term of supervised release. *See* 18 U.S.C. § 3583(c). In so doing, the district court observed that Bloch posed a high risk of recidivism, including "the risk of violent crime," and had "difficulty complying with conditions of supervision." As we have observed, "[r]educing recidivism is the main purpose of supervised release." *United States v. Siegel*, 753 F.3d 705, 708 (7th Cir. 2014).

The district court also noted Bloch's refusal to acknowledge a substance abuse problem that his family believes he has, a problem that has led to many encounters with law enforcement. That these justifications may also form the basis for Bloch's term of imprisonment is of no moment. The district court was under no requirement to provide two separate justifications for one criminal sentence. *See* § 3553(c) ("The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular *sentence*." (emphasis added)).

Bloch argues against our reliance on *Armour* because he says it "misapprehends" *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015). (Appellant Reply at 3.) He seizes upon a passage from *Thompson* in which we explain that § 3583(c)

requires a district court to state at the sentencing hearing its reasons for imposing supervised release based upon the § 3553(a) factors. 777 F.3d at 373. According to Bloch, "*Thompson* never said that by adequately explaining the length of a defendant's prison sentence, a district court necessarily gives a sufficient justification for the length of supervision." (Appellant Reply at 3.)

It is Bloch, however, who misapprehended *Thompson* by reading too much into this particular passage. That passage states that a district court imposing a criminal sentence that includes a term of supervised release must provide justification—considering the § 3553 factors—for why it did so. No more, no less.

*Thompson* at no point suggests that a district court must give two separate justifications for one criminal sentence. There, we did not assume the district court's sentencing justification in those cases related only to its imposition of the term of imprisonment, and as a result, remanded the cases to reconsider the term imprisonment as well as the term and conditions of supervised release. We took this approach because, as we explained in *Kappes*:

> [T]he custodial and supervised release portions of a sentence serve somewhat, though not entirely, overlapping purposes, there might properly be an interplay between prison time and the term and conditions of supervised release. If certain supervised release conditions are vacated, the balance struck by the sentencing judge might be disrupted to a degree where the judge would wish to alter the prison term and/or other conditions to ensure that the purposes of deterrence, rehabilitation, and protecting the public are appropriately furthered by

> the overall sentence. Accordingly, as we did in *Thompson*, we vacate the entire sentences and remand for a complete resentencing

782 F.3d at 867 (citation and footnote omitted). The relationship and interplay between these components all but requires them to be considered and discussed together in justifying a defendant's sentence.

Bloch's reliance on *United States v. Moore*, 788 F.3d 693 (7th Cir. 2015) and *Downs*, 784 F.3d 1180, is also misplaced. In *Moore*, the district court did not "enunciat[e] its finding that a term of supervised release was necessary," which is what lead us to remand the case for resentencing. 788 F.3d at 696. Here, unlike *Moore*, the district court enunciated that a "three-year supervised release term that was originally imposed [at Bloch's earlier sentencing] is appropriate." And, as discussed above, the district court explained why he needs supervision in light of his past recidivism and substance abuse issues.

As for *Downs*, Bloch argues the following sentence supports his position: "[The district court] was required, before deciding on the length of the defendant's term of supervised release, to calculate the guidelines range and assess its appropriateness as a guide to sentencing the defendant, in light of the sentencing factors in 18 U.S.C. § 3553(a)." 784 F.3d at 1181. Nothing in that passage is incompatible with our conclusion today or with what the district court did in Bloch's case. The district court here properly calculated the guidelines range, assessed its appropriateness in sentencing the defendant, and explained its justification for its criminal sentence through a discussion of the § 3553(a) factors. The district court gave an adequate explanation for its sentence, in-

cluding his term of supervised release, and therefore did not commit procedural error.

*B. Oral Pronouncement of Supervised Release Conditions*

In *Thompson*, we expressed a concern that district courts in this circuit were not providing defendants adequate notice of the supervised release conditions that the court may impose upon them and the reasons for doing so. 777 F.3d at 377.[3] There, we suggested one "best practice" could be for the court to "inform the parties of the conditions and the possible reasons for imposing them, so that they can develop arguments pro or con to present at the sentencing hearing." *Id.* at 377. We expressed the same concern in *Kappes* and suggested a similar approach. 782 F.3d at 842–43 (stating "that it is important [for sentencing judges] to give advance notice of the conditions being considered" and suggesting that those judges require the reasons for the recommended conditions appear in presentence reports).

*Thompson's* suggested best practice was the one embraced by the district court here. Prior to Bloch's sentencing, the district court circulated the conditions it proposed to impose upon Bloch and the reasons why it planned to impose each condition. The government and Bloch acknowledged receipt of these proposed conditions, and we can infer from Bloch's concerns with the home-visit condition that he had a chance to review them. Neither the government, nor Bloch could claim lack of notice. It was no surprise then that Bloch did

---

[3] We have long required that defendants receive notice of special conditions of supervised release that are "out of the ordinary, and thus unexpected." *United States v. Scott*, 316 F.3d 733, 736 (7th Cir. 2003).

not object when the district court incorporated those pro-posed conditions by reference during its oral pronounce-ment, as Bloch confirmed on two prior occasions that he had no further concern with his sentence other than the home-visit condition.

Typically, in these circumstances, no good deed goes un-punished. Bloch now complains that the district court need-ed to orally pronounce each and every one of the thirteen conditions the district court imposed. While it is true we have said that a district court "need[s] to orally pronounce all conditions [of supervised release] from the bench," *Kappes*, 782 F.3d at 862, we did so only because of the rule that "when there is a conflict between an oral and later writ-ten sentence, the oral judgment pronounced from the bench controls," *United States v. Johnson*, 765 F.3d 702, 710–11 (7th Cir. 2014). As we saw in *Johnson*, this rule works to prevent the practice of district courts imposing supervised release conditions that were never pronounced at sentencing. 765 F.3d at 711. If such conditions are never pronounced at sen-tencing, then the defendant is deprived of the right of object-ing to them. *See Kappes*, 782 F.3d at 843 ("The goal of provid-ing the parties with advance notice of the conditions at issue is to allow the parties to present an informed response.")

That possible harm is not present in this situation where Bloch had a chance to review the supervised release condi-tions as well as the reasons for imposing them, and he was given a meaningful opportunity to object. In fact, Bloch had far more opportunity to review and consider objections to those conditions than the defendants who have them read and imposed upon them at sentencing.

Just as important is that the district court's approach here does not create a situation where the oral sentence conflicts with the written judgment filed in the case's docket after sentencing occurs. Neither the government, nor Bloch contends there is any conflict between the March 18 notice of proposed conditions, which was orally incorporated by reference, and the written judgment entered. The reason then for the rule laid down in *Kappes* is satisfied, as the oral pronouncement and written judgment do not conflict. Also, of equal importance is the fact that the defendant received adequate notice of the proposed conditions. We see no reason why a district court cannot follow this approach moving forward. The district court could also specifically confirm that the defendant waives a formal reading of the conditions during the court's oral pronouncement of the sentence. Sections 3553 and 3583 are not, after all, the court reporter's welfare act. The district court did not commit procedural error in imposing Bloch's conditions of supervised release by incorporating its March 18 notice by reference into Bloch's sentence.

### C. Challenge to the Supervised Release Conditions

Bloch challenges the imposition of eight of the conditions of his supervised release, including the imposition of the home-visit condition. At his second resentencing, he objected to the home-visit condition but no others. We begin by evaluating the government's argument that Bloch waived his right to challenge those other seven conditions.

### 1. Waiver as to Seven of the Eight Conditions

Waiver is "'when a criminal defendant intentionally relinquishes a known right.'" *Armour*, 804 F.3d at 865. (quoting

*United States v. Brodie*, 507 F.3d 527, 530 (7th Cir. 2007)). It works to "extinguish[] any error and precludes appellate review." *Id.* (quotation marks omitted). In addressing waiver in the supervised release context, we have articulated the following rule: "[a] response to a general inquiry at the end of sentencing, and unaccompanied by either (1) an explicit approval of the condition or (2) a strategic reason to forego the argument at the hearing, does not constitute waiver." *United States v. Hinds*, 770 F.3d 658, 665 (7th Cir. 2014) (citing *United States v. Farmer*, 755 F.3d 849, 853 (7th Cir. 2014). Applying this rule, we have refused to find waiver in the supervised release context where the district court asked if there was "anything else" at the end of sentencing, *Farmer*, 755 F.3d at 853–54, and where the defendant answered "no" to the district court's "question regarding awareness of legal reasons why the sentence should not be imposed," *Hinds*, 770 F.3d at 665. *See also United States v. Speed*, 811 F.3d 854, 857 (7th Cir. 2016) (refusing to apply waiver where the judge asked if there was "anything unclear or confusing" about the defendants' sentence, and the defendants said no).

This rule, however, does not work to prevent the application of waiver here. As an initial matter, Bloch cannot claim lack of notice or surprise at the conditions the district court planned to impose, which distinguishes this case from those where we refused to apply waiver. *See Hinds*, 770 F.3d at 665 (defendant received no advance notice of the special conditions imposed on him); *Farmer*, 755 F.3d at 852–53 (proposed conditions of supervised release were not distributed to the government and defendant prior to sentencing). Here, Bloch acknowledged that he had a chance to review the district court's March 18 proposed notice of conditions.

Bloch also had the opportunity to object to the proposed conditions. The district court asked him if he had any objections to the conditions, and he responded that he had only one objection—to the condition allowing for home visits. And Bloch's decision to single out and object to only one condition is the very "[t]ouchstone of waiver," as it indicates "a knowing and intentional decision." *Armour*, 804 F.3d at 865 (quotation marks omitted). In other words, it reflects "a strategic reason to forego the argument at the hearing." *Hinds*, 770 F.3d at 665. While there may not be a *good* strategic reason for holding back a valid objection to a condition, that fact does not render the defendant's decision any less intentional. That is why we require defendants to voice their objections to the district court if they wish to preserve them for appellate review.

Finally, nothing about the district court's questioning concerning Bloch's supervised release conditions is vague or confusing. Bloch knew that "he could lodge an objection and purposefully declined to do so." *United States v. Murry*, 395 F.3d 712, 717 (7th Cir. 2005) (applying waiver where district court twice asked defendant if he objected to jury instructions, and defendant responded that he did not). Before pronouncing its sentence, the district court asked "assuming [Bloch] continues to object to Supervised Release Condition 10, does the defense have any further objection to the proposed sentence?" Bloch responded that he did not "other than [the objection] previously stated." Bloch undoubtedly understood that the district court's question here applied not only to the proposed term of imprisonment but also to the proposed conditions of supervised release. And, the district court confirmed that Bloch had no further objections to the proposed sentence. All together, the district court asked

Bloch three times if he had any concerns with the proposed conditions of supervised release. Other than objecting to the condition allowing for home visits, he said he did not have any.

Therefore, Bloch waived his ability to challenge all but the supervised release condition relating to home visits. *See United States v. Lewis*, No. 14-3635, 2016 WL 3004435, at *5 (7th Cir. May 24, 2016) (finding waiver where "[t]here were no surprises in the sentencing hearing related to supervised release" and the defendant did not object).

*2. Home Visits*

The only condition that Bloch can challenge on appeal then is the condition allowing the "probation officer to meet [Bloch] … at home or elsewhere" and to confiscate "any contraband the probation officer observes in plain view." The condition generally prohibits the probation officer from conducting such a visit to between the hours of 11 p.m. and 7 a.m. Bloch argues the imposition of this condition upon him is invalid under the Fourth Amendment and that the district court abused its discretion in imposing it.[4]

As to Bloch's argument that this condition violates the Fourth Amendment, we have already considered and rejected the same in *Armour*. 804 F.3d at 870;[5] *see also United States*

---

[4] While Bloch casts his challenge to this condition as a procedural one, we assume his challenge to be substantive in nature, as he admits the district court provided *some* justification for the imposition of this condition. His concern lies with the reasonableness of that justification.

[5] Contrary to Bloch's assertion in his reply brief, *Armour* does not rely upon a "'waiver' case" in supporting its conclusion on this issue. (Appel-

(continued…)

*v. Carson*, No. 15-2899, 2016 WL 2641821, at \*1 (7th Cir. May 6, 2016). We see no reason to revisit our decision and find its reasoning applies with equal force here. Supervised release conditions may implicate fundamental constitutional rights, "so long as those conditions are reasonably related to the ends of rehabilitation and protection of the public from recidivism." *Armour*, 804 F.3d at 870 (quotation marks omitted). As we describe below, the district court did that here.

His other principal concern appears to be with the adequacy of the district court's reasoning in imposing this condition. According to Bloch, the district court failed to expound upon its justification that the home visit can "facilitate the probation officer's ability to help" him. For example, Bloch contends the district court did not properly explain how home visits "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," which is a factor to consider under § 3553(a).

Bloch misunderstands what is required to justify the imposition of a discretionary condition of supervised release. The district court here provided a more than adequate and reasonable explanation for why a home-visit condition was appropriate. As a preliminary matter, the district court properly incorporated its justification from the March 18 no-

---

(…continued)

lant Reply at 21.) The case relied upon by this court in *Armour* is *United States v. Sines*, 303 F.3d 793 (7th Cir. 2002). While we found the defendant there waived some of his arguments, we did not apply waiver in the section *Armour* cited and quoted. Rather, we reviewed the condition at issue for an abuse of discretion. *Id.* at 800–01.

tice into Bloch's sentencing hearing. This approach gave Bloch advance notice of the court's reasoning for why it planned to impose certain conditions, which gave him more than enough time to formulate objections.

The court's explanation that the home visit would "help" Bloch makes sense when read in context of the sentencing hearing as a whole. We have observed this condition helps the defendant "reintegrate into society after his time in prison and to ensure that he is abiding by the conditions of his supervised release." *Armour*, 804 F.3d at 870. Further, the district court expressed concerns about Bloch's "difficulty complying with conditions of supervision" during the hearing. The Supreme Court has recognized that assistance in this "decompression stage" is particularly necessary for defendants like Bloch who have demonstrated issues in complying with conditions of supervised release. *Johnson v. United States*, 529 U.S. 694, 709 (2000).

The district court also stated in its March 18 notice that this condition was necessary to "monitor" and "protect the public if the defendant is found to be violating the conditions of release." We have already concluded such a justification for imposing the home-visit condition is sufficient. *See Carson*, 2016 WL 2641821, at *2 (finding sufficient a "judge's statement that the home-visit condition will enable the probation office to 'keep watch' and help enforce the other terms of release").

There was even more said during the sentencing hearing to justify this condition. The district court explained that Bloch posed a high risk of recidivism, a risk that was made greater by his purported problems with alcohol. Meetings with a probation officer then at Bloch's home or a "public

place" could not only serve to check on Bloch's sobriety but also to see if he was in possession of firearms. The explanations provided by the district court here for this condition no doubt are adequate and reasonable.

Finally, we address Bloch's objection with the district court's use of "or elsewhere" in the home-visit condition at the sentencing hearing, even though Bloch did not raise this argument on appeal. In *United States v. Henry*, we expressed concern with the use of "or elsewhere" in a similar home-visit condition, as it could allow for a probation officer "to pick a location that may be inconvenient for the defendant." 813 F.3d 681, 683 (7th Cir. 2016). Unlike the situation in *Henry* though, the district court here provided further clarification for what it meant by "or elsewhere." According to the district court, the term "elsewhere" means a "public place," such as a Starbuck's coffee shop, or the probation office. While not as ideal as the suggestions made for this condition in *Henry*, we believe this explanation provides sufficient guidance to the probation officer as to what an acceptable meeting place would be. As we said in *Kappes*, "at some point, we must fairly presume [the defendant]'s probation officer will apply the conditions in a reasonable manner." 782 F.3d at 857 (quotation marks omitted).

### III.  Conclusion

For the foregoing reasons, we AFFIRM.