In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1313

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EVELYN JOHNSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 15-CR-30152-NJR-01 — **Nancy J. Rosenstengel**, *Judge.*

ARGUED OCTOBER 31, 2018 — DECIDED DECEMBER 21, 2018

Before FLAUM, EASTERBROOK, and BRENNAN, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. After pleading guilty to preparing false tax returns for her clients, 26 U.S.C. §7206(2), Evelyn Johnson was sentenced to 18 months in prison, to be followed by one year's supervised release. The judgment includes $79,325 in restitution—the amount that Johnson's clients unlawfully avoided paying (with respect to the counts

of conviction) that had not been collected from the taxpayers before sentencing. Johnson does not contest her convictions or the length of her sentences. But she says that the prosecution should have told the judge how much more it might collect from her clients, which could affect how much she owes in restitution.

Johnson contends that the amount received from the taxpayers is exculpatory material that should have been revealed under *Brady v. Maryland*, 373 U.S. 83 (1963). Yet the collections were not concealed. The presentence report showed the court and Johnson that the United States already had collected substantial sums (the original loss figure exceeded $150,000) and was trying to obtain from taxpayers the rest of what they should have paid in the first place. Johnson was free to ask how much more had been collected by the date of sentencing but did not do so. *Brady* does not apply when information is available for the asking. See, e.g., *United States v. Morris*, 80 F.3d 1151, 1170 (7th Cir. 1996); *United States v. Wilson*, 901 F.2d 378, 380 (4th Cir. 1990).

The restitution statute, not the Constitution, determines the prosecution's duty—and the duty is one of credit against the judgment, not of disclosure during the sentencing hearing. The $79,325 figure reflects taxes still outstanding because of Johnson's fraud. But the parties disagree about whether tax collections are credited against that award.

The United States contends that 18 U.S.C. §3664(f)(1)(B) entitles it to collect the full $79,325 from Johnson and to keep whatever it receives from the taxpayers—and this despite the norm against double recovery. See *Paroline v. United States*, 572 U.S. 434 (2014); *Restatement (Second) of Torts* §885(3) (1979). If collections from taxpayers don't affect the

restitution obligation, there's no need to disclose the collections to Johnson, let alone credit them against the award. But that's not what §3664(f)(1)(B) says. It provides:

> In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution.

This is a statutory version of the collateral-source doctrine, familiar in tort law. See *Restatement (Second) of Torts* §920A(2). It deals with setting the base amount of restitution, *United States v. Malone*, 747 F.3d 481, 488 (7th Cir. 2014), not with how collections from joint wrongdoers are credited. (The taxpayers are culpable for signing and filing the false returns that Johnson prepared.)

The United States' interpretation would bring §3664(f)(1)(B) into conflict with §3664(j), which *does* deal with credits for third-party collections:

> (1) If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation.

> (2) Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in—

>> (A) any Federal civil proceeding; and

>> (B) any State civil proceeding, to the extent provided by the law of the State.

Section 3664(j)(1) completes the picture with respect to insurance and similar payments: these do not reduce the

amount of the restitution award (per §3664(f)(1)(B)), and the wrongdoer must reimburse the source of those benefits. Section 3664(j)(2) covers "compensatory damages", which reduce the amount the wrongdoer pays in restitution. This is the standard joint-and-several-liability approach of tort law, which applies to collections under §3664 too. Victims get just a single recovery. And since Johnson will receive credit against the restitution award for whatever the United States collects from the taxpayers, it was unnecessary to disclose the details of collection activities before the district judge determined the base restitution award.

Perhaps one could doubt that the collection of back taxes counts as "compensatory damages" under §3664(j)(2), but neither party to this appeal has taken issue with cases holding that tax collections must be credited against restitution awards in criminal prosecutions. Indeed, courts see this as such an easy question that they have treated the issue in non-precedential decisions. See *United States v. Smith*, 398 Fed. App'x 938, 941–42 (4th Cir. 2010); *United States v. Holland*, 141 Fed. App'x 589, 591 (9th Cir. 2005); *United States v. Kerekes*, 2012 U.S. Dist. LEXIS 115280 at *12 (S.D. N.Y. Aug. 15, 2012); *Rozin v. CIR*, T.C. Memo 2017-52 (Mar. 29, 2017). Two courts of appeals have come to the same result without discussing §3664(j)(2). See *United States v. Tucker*, 217 F.3d 960, 962 (8th Cir. 2000); *United States v. Helmsley*, 941 F.2d 71, 102 (2d Cir. 1991). And it does not seem to us a stretch to apply the label "damages" to collections of taxes wrongly unpaid as a result of criminal fraud.

All remaining issues concern the terms of Johnson's supervised release. Before sentencing she signed a waiver of her right to have these conditions read aloud, and she now

contends that this violated the Due Process Clause of the Fifth Amendment. But why? The proposed terms and conditions were included in the presentence report, which Johnson had seen. The court offered her a choice: Have these conditions read aloud as part of the sentencing or forego this right. She chose to forego it, deeming the writing adequate. We've recommended that district judges give defendants this very choice. See, e.g., *United States v. Bloch*, 825 F.3d 862, 872 (7th Cir. 2016). Defendants are entitled to waive their rights and do so routinely as part of guilty pleas or stipulations. Johnson does not point to anything that made this waiver involuntary. The court did not say or imply that Johnson would suffer in any way (other than boredom) if she demanded that the lengthy conditions be read verbatim at sentencing. Having made a free choice, she is bound by her decision and cannot now complain that the court did not read these conditions aloud.

In addition to waiving the reading of these conditions, Johnson also elected not to contest the substance of any. On appeal, however, she objects to five of them. Her failure to raise any of these objections in the district court limits our review to plain error. *United States v. Poulin*, 809 F.3d 924, 930 (7th Cir. 2016); *Bloch*, 825 F.3d at 869. And we don't see any error, let alone plain error. We give just two examples.

One contested condition reads: "The defendant shall not knowingly leave the judicial district without the permission of the Court or the probation officer." Johnson calls this vague, but it isn't. "Judicial district" is a statutory term. Anyone can look up the boundaries of this district, see 28 U.S.C. §93(c), and a person unable or unwilling to do that could look at the presentence report, which lists all counties in the

district. What's more, the word "knowingly" in this condition cures any potential vagueness. See *Screws v. United States*, 325 U.S. 91, 102 (1945). If Johnson strays outside the district by accident, she has not violated this condition.

Instead of dealing directly with the language of this condition, Johnson relies on *United States v. Ortiz*, 817 F.3d 553, 555 (7th Cir. 2016), which found excessive vagueness in a condition requiring the defendant to remain "within the jurisdiction" where he was being supervised. "The jurisdiction" does not have a statutory definition. It could mean anything from the city in which the probation office is located to the judicial district to the limits of the court's subpoena power (generally the district plus 100 miles) to the boundaries of the Seventh Circuit (Illinois, Indiana, and Wisconsin) to the United States as a whole. *Ortiz* insisted that district judges give better notice. The reference to "the judicial district" was the result; it supplies the degree of specificity missing from "the jurisdiction"; adding "knowingly" makes things doubly safe for defendants. The language in Johnson's case is exactly the sort of condition we have been urging district courts to employ.

Another contested condition reads: "The defendant shall respond to all inquiries of the probation officer and follow all reasonable instructions of the probation officer." The first part of this condition comes straight from a statute, 18 U.S.C. §3563(b)(17), but Johnson asserts that the word "reasonable" makes the second part excessively vague. We do not see how. "Reasonable" is one of those protean words that resists specification. It is ubiquitous in statutes and regulations, designed for the protection of people who otherwise would be beset by petty bureaucratic demands. *Thomas v. Chicago Park*

*District*, 534 U.S. 316, 324 (2002), holds that this word is permissible even in situations governed by the First Amendment; it is certainly permissible in a criminal judgment.

Would Johnson think herself better off if the word were deleted and she were obliged to do whatever the probation officer said, however silly or obnoxious that command might be? Does she want to face revocation of supervised release for failing to stand on her head when commanded to do so, or hoot like an owl in a restaurant? Johnson likely wants an elaborate definition, rather than deletion of this protection, but the history of tort law shows that any effort to define "reasonable" is a fool's errand. In *United States v. Kappes*, 782 F.3d 828, 860–62 (7th Cir. 2015), we recommended that district judges add the word "reasonable" to another condition (the one requiring defendants to submit to searches), so that probation officers could not intrude without justification into personal lives. Having deemed the word "reasonable" the solution to a problem in *Kappes*, we are hardly going to declare now that the word must be removed from all conditions of supervised release.

Johnson's remaining objections do not require separate discussion.

AFFIRMED