In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1217

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JASON E. STARKO,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:11-cr-30230-DRH-1 — **David R. Herndon**, *Chief Judge.*

---

ARGUED MAY 21, 2013 — DECIDED NOVEMBER 25, 2013

---

Before RIPPLE, WILLIAMS, and TINDER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Jason Starko was indicted for, and
pleaded guilty to, two counts of production of child pornogra-
phy, in violation of 18 U.S.C. § 2251(a). The court sentenced
Mr. Starko to 360 months' imprisonment on each count, to run
concurrently. Mr. Starko maintains that, in imposing sentence,
the district court failed to address one of his principal,
nonfrivolous arguments in support of a lower sentence. For the

reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

Mr. Starko was charged with and pleaded guilty to two counts of producing child pornography. The videos that formed the basis for the indictment were of a five-year-old girl; Mr. Starko was a friend of the girl's mother and was living in their home. Subsequent interviews with the victim, her seven-year-old sister and Mr. Starko's own daughter revealed that, in addition to filming and photographing the victim and her sister, Mr. Starko had touched the genitals of all three girls.

Mr. Starko was evaluated by a psychiatrist, Dr. Daniel Cuneo, to determine his competency to stand trial. Dr. Cuneo's report concluded that Mr. Starko was competent, but reflected "a diagnosis of major depressive episode, recurrent, polysubstance dependence in a controlled environment, and schizotypal personality disorder." Appellant's Br. 9.

Mr. Starko eventually pleaded guilty to the charges, and a presentence report ("PSR") was prepared. The PSR calculated Mr. Starko's guideline range as 360 months. Before the district court, Mr. Starko raised two objections to his sentence calculation, neither of which he renews on appeal. At sentencing, his counsel also argued for a below-guidelines sentence "principally because my client's [sic] mentally ill." R.53 at 69. Mr. Starko submitted Dr. Cuneo's report for the court's consideration, and Mr. Starko's counsel highlighted

Dr. Cuneo's findings, as well as the report of mental and emotional health set forth in the PSR. Mr. Starko's counsel also argued that Mr. Starko's failure to admit to his crimes at an earlier stage in the proceedings was due to the lack of medication for his mental illness. Near the end of his argument, Mr. Starko's counsel added the following observation:

> Now, [the Government] tells the Court, give him 40 years because it protects the public. But there are other mechanism[s] out there to protect the public, Your Honor. You can sentence my client to a sentence of 20 years, and at the end of that term he will, because of the nature of this case, he will be evaluated to see whether he's sexually dangerous or not, and if he's sexually dangerous at the end of that term, he will be the subject of a civil commitment, and he isn't going to be turned loose on the public in this country under the law as it stands today or in the future unless it's safe. At the end of the term that you give him he's going to be thoroughly evaluated. He's going to be evaluated regardless, but at the end of the term a decision will be made whether he can be released in the community, properly supervised and properly medicated or whether or not he'll be the subject of an indefinite civil commitment.

*Id.* at 72–73. Mr. Starko's counsel then concluded: "So I would suggest to the Court, you can sentence him to 20 years, and that punishes the man for the deed, but it also takes into account the fact that at least part of this is explained by his history, characteristics, and mental illness." *Id.* at 73. Mr. Starko did not submit a sentencing memorandum concerning the

merits or likelihood of civil commitment, and this was the only mention of civil commitment during the sentencing hearing.

When announcing the sentence, the district court expressed doubt that either Mr. Starko's conduct or his excuses for his conduct were attributable to his medication, his lack of medication or his mental illness. *See id.* at 82. It stated:

> This is quite serious, and it's the deliberate nature—I have a hard time accepting the defendant's defense of himself in terms of blaming it both on the type of medication he was taking, and then the medication he didn't take, and the wondering about the phantom hand syndrome.[1] When you see the picture of him touching, and the way in which he touched the vagina of the victim, not only spreading the legs, as [the Government] talked about, but spreading the—actually spreading the vagina of the child was just terrible. He clearly had an agenda with respect to these victims—the victim in the pictures, and also the other child that was considered relevant conduct in this case.

*Id.* The court also voiced concerns with respect to the seriousness of Mr. Starko's actions:

---

[1]   In his allocution, Mr. Starko informed the court that he "recently [had been] reading a book how sometimes we can't make decisions on our own, the things like Tourette's and the phantom hand syndrome and things." R.53 at 79. Mr. Starko appeared to be attributing his criminal actions, at least in part, to his inability to "control [his] hands" as dictated by "his subconscious." *Id.*

> When we look at the history and characteristics, though he didn't have [a] prior conviction, the Court certainly believed he had prior conduct of a similar nature with [another child], and there was a strong implication about another, so there's certainly prior conduct that leads the Court to believe that this wasn't the only time for this kind of conduct with the defendant, though we don't know about production of child pornography; we only know about the conduct with respect to child molestation. So we know that the defendant is quite dangerous.

*Id.* at 82–83. The court then evaluated the evidence it had been provided and the arguments that had been made in light of the factors set forth in 18 U.S.C. § 3553:

> The problem that the Court is presented with is, we have someone that has a mental illness of undefined parameters, that has a history of sexual crimes, with a significant sexual crime on this occasion, that has gone undiagnosed and untreated for, it would appear, a number of years. And what is the effect upon the Court in terms of how the Court is to treat that with respect to the sentence imposed reflecting the seriousness of the offense, providing just punishment, affording adequate deterrence to criminal conduct, and protecting the public from further crimes of the defendant?

*Id.* at 83–84. After considering these factors, the court announced its sentence:

The Court finds, quite frankly, that in a case such as this, that in order to provide adequate protection to the public for a gentleman that is 36 years old, who has the history and characteristics that this defendant has, who has the mental issues that this defendant has, who has committed the serious crime that he has, that the appropriate punishment for this particular crime is a punishment that is consistent with the advice issued by the Sentencing Commission, and so will impose a sentence of 360 months.

*Id.* at 84–85.

## II

## DISCUSSION

On appeal, Mr. Starko's sole argument is that the district court committed procedural error because it failed to address his argument that a twenty-year sentence was sufficient to serve the goals of sentencing because of the possibility of civil commitment at the end of his term. Appellant's Br. 2. He urges that a remand is necessary so that the district court may address explicitly this issue.

The Government counters that the district court addressed Mr. Starko's alleged mental illness, which was his principal argument for lenity. It also maintains that there is only a *possibility* that Mr. Starko will be civilly committed after he serves his term of imprisonment. Consequently, any argument that civil commitment guarantees the public's safety is purely

speculative and lacks the factual foundation necessary to warrant comment by the district court.

We have had several occasions to explain the responsibility of a district court in handing down a criminal sentence. We have stated that,

> [t]o avoid procedural error, sentencing judges must correctly calculate the guidelines range, evaluate the factors in 18 U.S.C. § 3553(a), and rely on properly supported facts. Judges must also adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. In selecting an appropriate sentence, district courts are expected to address principal, nonfrivolous arguments in mitigation, but should disregard contentions lacking factual foundation.

*United States v. Chapman*, 694 F.3d 908, 913–14 (7th Cir. 2012) (citations omitted) (internal quotation marks omitted). Courts do not have to engage in "a discourse of every single § 3553(a) factor"; however, "it is also the case that a 'rote statement that the judge considered all relevant factors will not always suffice.'" *United States v. Harris*, 567 F.3d 846, 854 (7th Cir. 2009) (quoting *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005)).

> In particular, when a court has "passed over in silence the principal argument made by the defendant even though the argument is not so weak as not to merit discussion," we do not have the assurance we need to satisfy ourselves that the defen-

dant's individual circumstances have been thoroughly considered.

*Id.* (quoting *Cunningham*, 429 F.3d at 679).

We perceive no procedural error in the district court's approach. The district court thoroughly addressed the issue of Mr. Starko's mental illness and any possible mitigating role it should have played in his sentence. Indeed, after defense counsel had addressed the court on the matter of sentencing and Mr. Starko had begun his allocution, the court interrupted the defendant and questioned him directly about his mental health history. The dialogue between the court and the defendant revealed a person who had realized that he had some sort of mental disorder, had engaged in various forms of self-diagnosis and self-help, but had received no diagnosis or professional care until Dr. Cuneo's examination in connection with this proceeding. The transcript reveals a district court that, far from ignoring the contention of defense counsel, actively pursued the matter of Mr. Starko's mental health. The court acknowledged that Mr. Starko "clearly … has a mental issue." R.53 at 83. Nevertheless, the court was unable to accept that there was a connection between Mr. Starko's mental illness and the crimes to which he pleaded: "I have a hard time accepting the defendant's defense of himself in terms of blaming it both on the type of medication he was taking, and then the medication he didn't take[] … ." *Id.* at 82. Moreover, the court noted that there was no question concerning Mr. Starko's competency, his ability to aid in his own defense or his capability to understand the wrongfulness of his actions. *See id.* at 83. Consequently, this is not a situation where the

district court "passed over in silence" the defendant's principal argument for a reduced sentence. *Harris*, 567 F.3d at 854 (internal quotation marks omitted). It is clear that the court understood Mr. Starko's arguments and his condition, but did not believe that his condition excused or mitigated the "quite serious" and "deliberate" crimes that Mr. Starko committed. R.53 at 82.

We have noted that "[t]he amount of explanation required from the district court varies with the circumstances." *United States v. Pietkiewicz*, 712 F.3d 1057, 1061 (7th Cir. 2013). Here, although the district court did not explicitly mention civil commitment in its statement of reasons, it did set forth a sufficient explanation as to why a period of lengthy incarceration was necessary to protect the public.

An individual may be civilly committed only if a court finds, by clear and convincing evidence, that he is "sexually dangerous." 18 U.S.C. § 4248(d). By definition, a person is "sexually dangerous" only if he "is sexually dangerous to others," that is, he "suffers from a serious mental illness, abnormality, or disorder *as a result of which* he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4247(a)(5)–(6) (emphasis added). In other words, to be civilly committed, there must be a causal connection between an individual's mental illness and his behavior. The evidence at trial did not convince the district court that there was an established causal connection between Mr. Starko's offense conduct and his mental condition. Our independent examination of the record convinces us that there was more than an adequate basis for

the court's skepticism and for its reluctance to jeopardize the public's protection from Mr. Starko's predatory conduct on such thin psychiatric evidence. The district court was on solid ground in not accepting Mr. Starko's argument that his illness was related to his predatory actions. Having determined that one of the requirements for civil commitment could not be satisfied, the district court could not rely on the civil commitment process to protect adequately the public from any future predatory behavior on the part of Mr. Starko.

Our case law requires that a district court "must … 'adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.'" *Chapman*, 694 F.3d at 913 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The district court's explanation of Mr. Starko's sentence satisfies these standards.

### Conclusion

For the reasons set forth above, we affirm the judgment of the district court.

AFFIRMED