In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 15-2890, 15-2946

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

CLARK BICKART and JERLENE BICKART,

*Defendants-Appellants*.

———————————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14-cr-00245 — **Thomas M. Durkin**, *Judge*.

———————————

ARGUED APRIL 19, 2016 — DECIDED JUNE 17, 2016

———————————

Before BAUER, POSNER, and FLAUM, *Circuit Judges*.

FLAUM, *Circuit Judge*. Clark and Jerlene Bickart were con-
victed for tax fraud for submitting a falsified tax return sup-
ported by fabricated 1099-OID forms. The Bickarts challenge
the imposition of the sophisticated means sentencing en-
hancement as well as their conditions of supervised release.
For the following reasons, we vacate the third-party notifica-

tion condition of Jerlene Bickart's supervised release and re-
mand for resentencing. We affirm defendants' sentences and
remaining conditions of supervised release in all other re-
spects.

## I. Background

On May 4, 2009, Jerlene Bickart, with the assistance of her
husband, Clark Bickart, prepared and filed an income tax re-
turn containing a false income amount and a false withhold-
ing amount. The false income and withholding amounts were
supported by nine fabricated 1099-OID forms that were sub-
mitted separately to the Internal Revenue Service ("IRS") in
April 2009.[1] The 1099-OID forms were made to appear as if
they came from a number of major financial institutions,
when in fact, the financial institutions never issued any in-
come to Jerlene nor withheld any taxes from her. Jerlene
claimed the Bickarts' mortgage and credit limits as income,
and withheld that amount minus $100. On May 15, the IRS
paid Jerlene her claimed refund of $115,412. Absent the false
income and withholding amounts, Jerlene's refund would
have been only $263.

In January 2011, the IRS conducted an audit and discov-
ered that these financial institutions never paid income to nor
withheld taxes from Jerlene. On March 23, the IRS sent Jerlene
a bill for $217,923 for past due taxes, penalties, and interest,
and explained that the submitted 1099-OID forms were fraud-
ulent.

---

[1] 1099-OID forms report taxable income from original issue discount—a
form of interest on debt instruments—and any income tax withheld. *See*
*United States v. Rampton*, 762 F.3d 1152, 1153–54 (10th Cir. 2014).

Over the next four years, the Bickarts engaged in obstructive conduct to avoid paying their tax debt. The Bickarts first sent the IRS a 1040-V form, an IRS payment coupon, purporting to pay the amount. As an IRS agent later explained, this form did not constitute payment.

On August 19, 2011, IRS agents interviewed the Bickarts. Jerlene told the agents that she and Clark had prepared the tax return and submitted the 1099-OID forms. Clark stated that he had prepared the 1099-OID forms based on information he obtained from a website. He claimed that he had spent over six months preparing to file the forms.

In May 2012, an IRS revenue officer met with Jerlene. Jerlene claimed that the 1040-V form had satisfied the tax debt. The revenue officer informed Jerlene that the form did not constitute payment. After the IRS sent another bill, Jerlene sent the bill back with a response claiming that the bill had already been paid along with a fraudulent 1099-OID form. Then, in July 2012, Jerlene mailed a letter to the revenue officer with a number of baseless accusations, including that the officer had committed mail fraud by attempting to levy her wages. She sent an equally bizarre letter in December 2012, this time with a "fee schedule," in which she claimed that the revenue officer owed her 588 ounces of silver because he had committed "Larceny by Trick." In October 2013, Clark filed a frivolous lawsuit in the Northern District of Illinois against the revenue officer and his supervisor under a fake name.

On May 1, 2014, Clark and Jerlene Bickart were indicted for conspiring to file a false claim to defraud the government in violation of 18 U.S.C. § 286 and for filing a false claim in violation of 18 U.S.C. § 287.

The Bickarts proceeded pro se at trial and continued their pattern of obstructive conduct. Defendants filed motions alleging that they were sovereign citizens. They made various nonsensical accusations, including that "attorneys and judges of the United States are agents of the British Crown and answer to the [Queen] of England." Neither defendant testified. On March 20, 2015, the jury found defendants guilty on both counts. The Bickarts moved for acquittal, but their motions were denied.

Prior to sentencing, the U.S. Probation Office filed a presentence investigation report ("PSR"). The PSR stated that each defendant had a base offense level of 16. The PSR applied a two-level enhancement for sophisticated means because "defendants created and submitted false and fictitious Forms 1099-OID in support of the 2008 tax return." The PSR also applied a two-level enhancement for obstruction of justice. Neither defendant had a criminal history. Based on the total offense level of 20, the sentencing guidelines provided for an imprisonment range of 33 to 41 months.

The PSR also recommended that both defendants serve one to three year terms of supervised release and proposed twenty-two conditions of supervised release, including three mandatory conditions, eleven discretionary conditions, and eight special conditions. The Bickarts objected to several of these conditions prior to sentencing. The government accepted defendants' objection related to the excessive use of alcohol condition but disputed their objections related to probation officer visits and third-party notification.

Defendants accepted their appointed attorneys' assistance for sentencing. At the hearing, neither defendant objected to the PSR's guidelines calculations, including the application of

the sophisticated means enhancement. The district court concluded that the sophisticated means enhancement applied "because false and fictitious Forms 1099-OIDs were prepared and submitted in support of the 2008 return. It took some amount of cleverness to create such documents and send them in." The scheme "was a calculated effort to steal money from the government." The district court sentenced each defendant to concurrent terms of 24 months in prison, 9 months below the guidelines range, with their terms staggered, as well as restitution.

The court also imposed a two-year term of supervised release for each defendant. Defendants objected to two conditions at sentencing. Defendants first objected to the third-party notification condition, which requires them to notify third parties of risks related to their criminal history when directed by the probation office, as vague. The district court nonetheless imposed the condition but modified it to require the probation office to seek the district court's approval before notifying or requiring that defendants notify third parties. The modified condition also gives defendants seven days to object to notification.

Additionally, defendants objected to the condition permitting a probation officer to visit them at home or at work at any reasonable time, arguing that the condition was unnecessary and would make it difficult to secure and retain employment upon release. The district court overruled the objection, finding that it would be contrary to the goals of the probation office to do anything that would cause defendants to lose their jobs. Defendants appeal, challenging the application of the sophisticated means enhancement and the following conditions of supervised release:

- Discretionary Condition #4: Seek, and work conscientiously, at lawful employment or pursue conscientiously a course of study or vocational training that will equip the defendant for employment.

- Special Condition #5: Not incur new credit charges or open additional lines of credit without the approval of a probation officer unless the defendant is in compliance with the financial obligations imposed by this judgment.

- Special Condition #7: Notify the court of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution, fines, or special assessments.

- Special Condition #12: Notify, as directed by the Probation Officer, third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the Probation Officer to make such notifications and to confirm the defendant's compliance with such notification requirement. If the Probation Officer believes notification is necessary, she shall inform the defendant and seek the Court's permission in advance. The defendant shall be given 7 days advance notice in order to object and seek legal representation from his attorney and/or the Federal Defender's Office. If the defendant does not object within the 7 day time frame, the Probation Officer shall make the notification, with the Court's permission.

- Discretionary Condition #16: Permit a probation officer to visit the defendant at any reasonable time at home and at work.

## II. Discussion

### A. Sophisticated Means Enhancement

Both defendants challenge the application of the sophisticated means sentencing enhancement. Ordinarily, "[t]he district court's finding that the defendant employed sophisticated means to impede the discovery of the existence and the extent of his criminal conduct is a factual one reviewed by this Court for clear error." *United States v. Friend*, 104 F.3d 127, 129 (7th Cir. 1997). However, defendants concede that there was no objection to the enhancement during sentencing, and thus we review for plain error. *United States v. Austin*, 806 F.3d 425, 434 (7th Cir. 2015). To demonstrate plain error, defendants must show: (1) an error or defect, (2) that is clear or obvious, (3) affecting the defendants' substantial rights. *Id.* Even then, we have discretion to correct the error if it seriously impugns the fairness, integrity, or public reputation of the judicial proceedings, but we need not do so. *Id.*

The sentencing guidelines call for a two-level enhancement for offenses involving sophisticated means. U.S.S.G. § 2T1.1(b)(2). The application note provides that "'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated

means." *Id.* at cmt. n.5. The district court imposed this en-hancement because it found that defendants fabricated the 1099-OID forms to support their tax return.

Defendants insist that the district court should not have applied the sophisticated means enhancement because their conduct did not involve any concealment beyond that inher-ent in the tax fraud itself. Defendants contend that Clark merely printed the forms from the internet and filled them out using information he found on a website. They contrast this case with "truly sophisticated" schemes such as those em-ploying offshore accounts or corporate shells. And they em-phasize that the scheme involved only themselves, occurred only once, and was easy for the IRS to detect.

In *United States v. Kontny*, 238 F.3d 815 (7th Cir. 2001), we examined the sophisticated means enhancement in depth. We explained that "[t]he more sophisticated the efforts that an of-fender employs to conceal his offense, the less likely he is to be detected, and so he should be given a heavier sentence to maintain the same expected punishment … ." *Id.* at 820. Ac-cordingly, we held that "sophistication" refers "to the pres-ence of efforts at concealment that go beyond (not necessarily far beyond, for it is only a two-level enhancement … ) the con-cealment inherent in tax fraud." *Id.* at 821. In *Kontny*, the de-fendants wrote separate checks to employees, reprogrammed a computer, and falsified payment stubs sent to their account-ants in order to classify overtime pay as wages. *Id.* at 820. We noted that although the defendants' efforts were unsophisti-cated in the "lay sense of the word" and compared to the il-lustrative examples in the guidelines' application notes, they "were sophisticated in relation to a [hypothetical] case in which the owner of a shop evades taxes by emptying the

drawer of the cash register before counting the day's cash receipts and puts the cash thus skimmed into a shoebox and slides it under his bed … ." *Id.*

Likewise, in *United States v. Fife*, 471 F.3d 750, 753 (7th Cir. 2006), we stated that sophisticated means "are those which are more complex than those involved in the run-of-the-mill tax evasion case." The enhancement "does not require a brilliant scheme, just one that displays a greater level of planning or concealment than the usual tax evasion case." *Id.* at 754.

Our precedent therefore supports the application of the sophisticated means enhancement in this case. As *Kontny* explains, the enhancement requires some efforts of concealment beyond the concealment inherent in tax fraud. 238 F.3d at 821. To prove tax fraud under § 287, the government need only show that a defendant knowingly presented a false claim, such as understating income or overstating withholdings on a tax return. *See United States v. Clarke*, 801 F.3d 824, 827–28 (7th Cir. 2015). Consequently, the Bickarts' fabrication of the 1099-OID forms to corroborate their false return represents concealment that moves this case beyond basic tax fraud. The Bickarts fabricated nine different 1099-OID forms to appear as if the forms came from various major financial institutions. They calculated falsified income and withholding amounts to maximize their tax return. They submitted the 1099-OID forms and then, separately, the falsified tax return, with amounts corresponding to those in the 1099-OID forms. Indeed, Clark told the IRS agent during his interview that the fraud took six months of planning and research.

To be clear, the Bickarts' conduct ranks on the low-end of tax scheme sophistication. But the fact that they could have used "even more elaborate mechanisms to conceal" the fraud

does not defeat a finding of sophisticated means. *United States v. Madoch*, 108 F.3d 761, 766 (7th Cir. 1997). The enhancement is aimed at defendants who take deliberate steps to make their criminal activity difficult to detect. *United States v. O'Doherty*, 643 F.3d 209, 220 (7th Cir. 2011). This accurately describes the Bickarts' conduct. Further, our conclusion is consistent with the views expressed by our sister circuits to address instances of 1099-OID fraud. *See United States v. Johnston*, 620 F. App'x 839, 854 (11th Cir. 2015), *cert. denied*, 2016 WL 1117477 (2016) ("[T]he concept of the 1099-OID scheme itself is inherently more sophisticated than the standard tax fraud, where one simply overstates withholdings or understates income."); *United States v. Morris*, 573 F. App'x 712, 727 (10th Cir. 2014) ("[T]he complexity of the Form 1099-OID scheme supported the application of the sophisticated means-enhancement."). Therefore, the district court did not plainly err in applying the sophisticated means enhancement to defendants' sentences.

### B. Conditions of Supervised Release

Defendants also raise several arguments related to their terms of supervised release. Defendants first contend that the district court did not adequately justify the terms of supervised release. We review de novo whether a district court committed procedural error in imposing such conditions, including whether the court adequately explained the sentence. *United States v. Poulin*, 745 F.3d 796, 800 (7th Cir. 2014).

Defendants also argue that particular conditions of their supervised release are vague or overbroad. We review contested conditions for abuse of discretion and uncontested conditions for plain error. *United States v. Armour*, 804 F.3d 859, 867 (7th Cir. 2015).

*1. Two-Year Terms of Supervised Release*

Both defendants contend that the district court did not ad-equately explain the reasons for imposing their respective two-year terms of supervised release. The district court "must justify the conditions and the length of the term at sentencing by an adequate statement of reasons." *United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015). A district judge need not ad-dress every factor in a checklist fashion nor give a speech about each condition, but should rarely, if ever, list a multi-tude of conditions without discussion. *Id.* at 845–46.

At sentencing, the district court carefully considered the factors set forth in 18 U.S.C. § 3553(a) before imposing Clark's two-year prison sentence. The court next imposed Clark's two-year term of supervised released and pronounced the conditions of that supervision. The district court then turned to Jerlene, imposed the same prison sentence as it did for Clark, and stated: "I'm going to impose the same conditions of supervised release on you. Do you wish to have me state them again?" Jerlene responded "no" and the district court imposed the same conditions without any further explication. On appeal, defendants argue that under 18 U.S.C. § 3583(c), the district court was required to consider separately the § 3553(a) factors justifying their respective terms and condi-tions of supervised release.

This argument is foreclosed by *United States v. Armour*, in which we explained that "[s]upervised release is part of the sentence imposed, so the district court's justifications for im-posing the [sentence of imprisonment] also apply to the … term of supervised release." 804 F.3d at 867–68. Defendants concede that the district court adequately justified their terms of imprisonment.

Moreover, the record indicates that the district court did not simply list the terms of supervised release without explanation. The district court specifically tied the conditions of supervised release to the § 3553(a) factors, explaining that the discretionary conditions "are all necessary to facilitate supervision of you, which is important to promote respect for the law and deter you from future crimes." The court also noted that the special conditions "are necessary to provide for your rehabilitation and ensure that you're engaged in lawful pursuits rather than criminal activity," and "are necessary in light of the significant losses your scheme caused the United States Treasury." Furthermore, the district court engaged in a detailed exposition of the two conditions that defendants objected to at sentencing—the third-party notification condition and probation officer visit condition—thoroughly explaining why these particular conditions were necessary.

Jerlene also argues that the district court erred by not orally stating the conditions of her supervised release when sentencing her. It is true that a district court must orally pronounce all conditions at sentencing. *Kappes*, 782 F.3d at 839 (requiring that a district court "orally pronounce all conditions"). But Jerlene waived this issue when she stated that a recitation of the identical conditions imposed just moments earlier on her husband was unnecessary.

*2. Seek and Work Conscientiously Requirement*

Next, defendants challenge several specific terms of their supervised release. Jerlene first contends that discretionary condition #4, which provides that defendants must "[s]eek, and work conscientiously, at lawful employment or pursue conscientiously a course of study or vocational training that will equip the defendant for employment," is impermissibly

vague because "conscientiously" is undefined. She did not
object to this condition at sentencing and so we review for
plain error. "A condition of supervised release is unconstitu-
tionally vague if it would not afford a person of reasonable
intelligence with sufficient notice as to the conduct prohib-
ited." *Armour*, 804 F.3d at 868 (quoting *United States v. Schave*,
186 F.3d 839, 843 (7th Cir. 1999)). Jerlene analogizes this con-
dition to the condition that a defendant work "regularly at a
lawful occupation," which we found vague in *Kappes*, and the
condition that a defendant not "frequent" certain places,
which we struck down in *Thompson*. *Kappes*, 782 F.3d at 849;
*United States v. Thompson*, 777 F.3d 368, 379 (7th Cir. 2015). The
government responds that the condition is not vague because
"conscientiously" has a generally understood meaning—be-
ing "careful about doing what you are supposed to do."

Although this condition could perhaps be worded more
clearly, we agree with the government that it passes muster,
especially under plain error review. The condition is meant to
ensure that defendants are genuinely working towards pay-
ing restitution. This understanding would be sufficiently clear
to a reasonable person.

### 3. Prohibition Against New Credit Charges

Both Bickarts challenge special condition #5, which pro-
hibits them from "incur[ring] new credit charges or open[ing]
additional lines of credit without the approval of a probation
officer unless the defendant is in compliance with the finan-
cial obligations imposed by" the court. Defendants did not
object to this condition at sentencing, and thus we review for
plain error. Defendants argue that the condition is overbroad
because it will prevent them from making essential purchases

such as food and gasoline, impose an undue burden on them, and stifle rehabilitative ends.

Yet, as the government points out, this condition will only restrict defendants if they fail to comply with the restitution obligations imposed by the district court. The restitution judgment includes a schedule for payments, demanding "an amount that is at least 10 percent of your net monthly income, defined as income net of reasonable expenses for basic necessities such as food, shelter, utilities, insurance, and employment-related expenses." In other words, the schedule of restitution payments only requires that defendants pay ten percent of their monthly income less basic expenses. Further, the condition includes an exception if defendants obtain the approval of a probation officer. Given these limits, defendants' concerns are exaggerated. The condition does not impose an undue burden; rather, it imposes a reasonable restriction on defendants' financial affairs while they fulfill their restitution obligations.

*4. Change in Economic Circumstances Notification Requirement*

Jerlene contends that the condition requiring defendants to "[n]otify the court of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution, fines, or special assessments" is unconstitutionally vague because the meaning of "any material change" is not defined. We review this condition for plain error. Jerlene analogizes her case to *Kappes*, in which we noted that a condition requiring the defendant to notify his probation officer of any change in employment "fails to indicate whether change in employment just means changing employers or also includes changing from one position to another for

the same employer at the same workplace." 782 F.3d at 849 (quoting *Thompson*, 777 F.3d at 379).

The condition in this case is more precise than the one addressed in *Kappes*. Jerlene must only notify the court of a change in economic circumstance when that change is material, and the condition specifically ties the requirement to defendants' ability to pay restitution. The condition need not be linked to a particular dollar amount to survive scrutiny. This condition thus makes it sufficiently clear when defendants must notify the court of a change in their economic circumstances.

*5. Third-Party Notification Requirement*

Jerlene (but not Clark) also argues that special condition #12, requiring notification to third parties, is fatally vague. The condition, as proposed in the PSR, stated:

> Notify, as directed by the Probation Officer, third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the Probation Officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Jerlene adopted Clark's objection to this condition at sentencing, and therefore we review for abuse of discretion. In response to defendants' objections, the district court modified the condition to add:

> If the Probation Officer believes notification is necessary, she shall inform the defendant and seek the Court's permission in advance. The defendant shall be given 7 days advance notice in

> order to object and seek legal representation
> from his attorney and/or the Federal Defender's
> Office. If the defendant does not object within
> the 7 day time frame, the Probation Officer shall
> make the notification, with the Court's permis-
> sion.

Accordingly, the modified condition requires the probation office to seek the court's approval and gives defendants seven days' notice before notifying or requiring notification of third parties.

Nonetheless, Jerlene argues that the revised condition remains vague under *Thompson* and *Kappes*. These cases found a similar condition that lacked a court-approval requirement vague because there was "no indication of what is meant by 'personal history' and 'characteristics' or what 'risks' must be disclosed to which 'third parties.'" *Kappes*, 782 F.3d at 849 (quoting *Thompson*, 777 F.3d at 379). The government argues that because, in this case, notification requires the court's prior approval and gives defendants an opportunity to respond, the condition is permissible.

Although the district court's modification softens the consequences of the vagueness we identified in *Thompson* and *Kappes*, the underlying vagueness remains. We disapproved of the condition in *Thompson* and *Kappes* because we thought that "personal history," "characteristics," "risks," and "third parties," were impermissibly vague. The modified condition in this case still contains these vague terms and offers no additional guidance as to their meaning. We appreciate the district court's effort to rescue this condition by adding a procedural mechanism, but we believe that it is appropriate to tackle vagueness head-on by defining or removing vague

terms. As we noted in *Kappes*, "[p]resumably, the meaning of these terms would change from defendant to defendant, which makes definitions particularly important with this condition." 782 F.3d at 849. Therefore, the district court abused its discretion by imposing this condition, and we must remand for resentencing of Jerlene with respect to this condition.[2]

On remand, the district court should define these vague terms or remove them. For example, according to the condition as currently worded, defendants must notify third parties of "risks" associated with their "personal history or characteristics," but it is unclear what part of their "personal history" and which "characteristics" are subject to this requirement. If, in reality, defendants need only notify third parties of their criminal history, the terms "personal history" and "characteristics" should be excluded. In addition, the phrase "third parties" should be defined. If, for instance, "third parties" is intended to mean employers and individuals with whom defendants conduct business, it must be defined accordingly.

*6. Requirement to Permit Probation Officer Visits*

Finally, Clark contends that the condition that defendants "[p]ermit a probation officer to visit the defendants at any reasonable time at home and at work" is unwarranted and overly broad. Clark objected to this condition at sentencing, arguing that the condition would make it difficult for him to find employment and that he could confirm his employment by providing the probation office with payment stubs. The district court overruled the objection. The court noted that it would run contrary to the goals of the probation office to do

---

[2] Since Clark did not challenge this condition on appeal, he has waived any argument regarding this condition.

anything to cause a defendant to lose his job and, in fact, the condition was intended to make supervision easier for the defendant. The court therefore refused "to tie the hands of the probation officer, or really, of the defendant" by limiting the probation office's ability to confirm defendants' employment.

We review for abuse of discretion. On appeal, Clark reiterates that the condition is overbroad because there are other, less invasive ways for the probation office to confirm his employment status, such as calling his employer or requesting proof of employment. However, we do not think that this condition is overly intrusive. We disapproved of a similar condition in *Thompson* because it "would allow the probation officer to 'visit' the defendant at 3:00 a.m. every morning … ." 777 F.3d at 380. By contrast, the condition in this case only permits probation officers to visit Clark at a "reasonable time." In addition, this condition is appropriate under the circumstances as defendants were convicted for defrauding the government.

## III. Conclusion

For the foregoing reasons, we conclude that a limited remand to reconsider the third-party notification condition of Jerlene Bickart's supervised release is appropriate. *See United States v. Purham*, 795 F.3d 761, 767 (7th Cir. 2015). Accordingly, we VACATE special condition #12 of Jerlene Bickart's supervised release and REMAND to the district court for limited proceedings consistent with this opinion. Defendants' sentences are AFFIRMED in every other respect.