In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2062

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JULIUS PETERSON, also known as
Eugene Peterson,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cr-00386-1 — **Charles R. Norgle**, *Judge.*

ARGUED JANUARY 19, 2018 — DECIDED MAY 29, 2018

Before BAUER, MANION, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* On June 24, 2015, a grand jury indicted Julius Peterson on two counts of financial institution fraud, one count of making a false statement to a financial institution, and one count of bankruptcy fraud. Specifically, Counts One and Two alleged a violation of 18 U.S.C. § 1344 by submitting false documents in relation to his sale of 7931 S. Union Avenue and 6821 S. Dante Avenue in Chi-

cago, Illinois, Count Three alleged a violation of 18 U.S.C.
§ 1014 by making a false statement to a financial institution
that influenced a mortgage loan for one of those properties,
and Count Four alleged that he violated 18 U.S.C. § 152(3) by
making false statements in his bankruptcy petition.

Peterson pled guilty to one count of financial institution
fraud and one count of bankruptcy fraud. The district court
sentenced him to 24 months' imprisonment, as well as five
years of supervised release, and ordered him to pay restitu-
tion in the amount of $166,936. On appeal, Peterson raises
two challenges to that sentence. First, he asserts that the dis-
trict court erred in imposing a two-level enhancement under
U.S.S.G. § 2B1.1(b)(10)(C) because Peterson used "sophisti-
cated means." Second, he argues that the district court erred
in failing to provide reasons for the imposition of the terms
of supervised release. We consider these issues in turn.

The sophisticated means enhancement was imposed by
the district court based on the nature of the offense. The facts
underlying the offense were set forth in the PSR and were
not objected to by Peterson. The conduct at issue in this case
concerned a scheme to defraud financial institutions by false
representations surrounding the sale of property. The sale of
the property at 7931 S. Union Avenue is illustrative. Peterson
sold property to the buyer, Victoria Nyarko, who obtained
an FHA-insured loan for the property from a financial insti-
tution. In obtaining the loan, Nyarko submitted paperwork
indicating that the downpayment was a gift from her aunt,
Felicia Thomas, and included a "gift letter" in the applica-
tion that had a signature purportedly of Thomas. Thomas,
however, was not Nyarko's aunt, but instead was a friend of
Peterson, and the signature was not hers. Peterson provided

money to Thomas, and Thomas then provided a cashier's check to Nyarko with Thomas as the remitter. That money was deposited in Nyarko's account, and Nyarko then provided the downpayment with a cashier's check drawn on her account with her name as remitter. In that way, a financial institution examining the origin of the money for the downpayment would trace it as originating with Thomas, who was identified as the one gifting the downpayment. Peterson attended the closing and signed documents indicating that he had not paid or reimbursed Nyarko for any part of the cash downpayment and that Nyarko was providing those funds herself. Following the sale, Peterson deposited the approximately $169,433 proceeds of the sale in a bank account in the name of Niya's Trucking and Transporting, a company controlled by Peterson. He then paid Thomas with a portion of the proceeds, and used $30,000 of those funds to purchase a cashier's check payable to a company controlled by Nyarko, Victory Development Group. The account for that entity had only $100 in it prior to that $30,000 deposit. When Nyarko defaulted on that FHA-insured loan, the Department of Housing and Urban Development paid out approximately $214,075.

Peterson argues that the district court erred in imposing a two-level enhancement for the use of sophisticated means, because the facts demonstrated only a garden-variety mortgage fraud scheme. He points to the language of the enhancement and the Application Note to that provision. Guideline §2B1.1(b)(10)(C) provides for a two-level enhancement "[i]f the offense otherwise involved sophisticated means," and Application Note 9(B) states that sophisticated means includes

especially complex or especially intricate of-
fense conduct pertaining to the execution or
concealment of an offense. For example, in a
telemarketing scheme, locating the main office
of the scheme in one jurisdiction but locating
soliciting operations in another jurisdiction or-
dinarily indicates sophisticated means. Con-
duct such as hiding assets or transactions, or
both, through the use of fictitious entities, cor-
porate shells, or offshore financial accounts al-
so ordinarily indicates sophisticated means.

Peterson contends that the conduct in this case does not
fall within that definition. He argues that a "genuine U.S.
corporate account" was used to undertake the relevant
transactions, and therefore this case is not equivalent to the
illustrative items such as fictitious entities, corporate shells,
or offshore accounts. According to Peterson, the district
court erred in crediting the government's argument that the
conduct involved hidden transactions. Peterson contends
that the district court was required to make findings that es-
tablished that his offense conduct involved something akin
to the use of fictitious entities, corporate shells, or other off-
shore accounts.

That argument fails to appreciate that sophisticated
means can vary based on the nature of the offense. It will not
always involve means as elaborate as offshore accounts or
corporate shells. The examples in the Application Note are
merely illustrative of the type of conduct that could demon-
strate sophisticated means. We have consistently recognized
that "[a]pplication of the enhancement is proper 'when the
conduct shows a greater level of planning or concealment

than the typical fraud of its kind.'" *United States v. DeMarco*, 784 F.3d 388, 397 (7th Cir. 2015), quoting *United States v. Knox*, 624 F.3d 865, 871 (7th Cir. 2010); *United States v. Sheneman*, 682 F.3d 623, 631–32 (7th Cir. 2012).

For instance, in *Sheneman*, the defendant argued that the sophisticated means enhancement should not apply because the offense was a garden variety home flipping scam. *Id*. at 632. We upheld the district court's imposition of the enhancement, holding that the offense conduct went beyond a simple scam and included the utilization of powers of attorney to conceal the activity, misrepresentations to buyers, falsification of loan documents, concealment of the source of down payments and closing costs, and artificial inflation of buyers' bank accounts. *Id*. We noted that we had upheld the enhancement in similar mortgage fraud schemes such as in *Knox*, 624 F.3d at 871–72 and *United States v. Green*, 648 F.3d 569, 576–77 (7th Cir. 2011). In *Knox*, we affirmed the enhancement where the defendant used fraudulent appraisals and false promises to buyers, and falsified loan applications to convince mortgage lenders to finance. The enhancement was also deemed applicable in *Green* where the defendants purchased seventy properties using fraudulent loan applications and fabricated documents to obtain the mortgages.

Similarly, in *United States v. Anobah*, 734 F.3d 733, 739 (7th Cir. 2013), we rejected the defendant's argument that the offense did not involve a greater level of planning or concealment than a typical fraud of its kind. The district court found that the scheme involved property in two states, the use of straw buyers, false loan applications and other supporting documents, and the use of multiple people to aid in the scheme. *Id*. We held that the court did not clearly err in de-

termining that the sophisticated means enhancement was applicable on those facts. *Id*.

The present case involves similar allegations of planning and concealment, exceeding that of the "garden variety" mortgage fraud scheme. The conduct in this case went beyond that of a simple mortgage fraud case in which the defendant might provide funds to the buyer for the downpayment and forward a kickback to the buyer after the sale. In this case, the defendant engaged in significant efforts to conceal the source of the downpayment and the kickbacks paid. The downpayment was made through a friend of the defendant, Thomas, who was falsely identified as the aunt of the buyer, Nyarko. Money was not transferred directly from the defendant to Nyarko, but instead was deposited in Thomas' account, and Thomas then provided a cashier's check to Nyarko from her account, thus concealing the source of the funds. In furtherance of those efforts, a fraudulent document was provided identifying Thomas as Nyarko's aunt and the source of the downpayment funds. Efforts were also made to conceal the kickback paid to Nyarko. The proceeds of the sale were deposited in a bank account in the name of Niya's Trucking & Transporting, and a portion of those proceeds was paid to Nyarko by a cashier's check payable to Victory Development Group. As the district court pointed out, that company, Victory Development Group, had no interest or activity with respect to the real estate transaction for which the payment was made. The only reason for the payment to that business instead of directly to Nyarko was for concealment of the criminal activity. This case therefore involves significant actions to conceal the trail of money and to obscure the identity of the provider and recipient of funds, thus distinguishing it from the typical

mortgage fraud and supporting the imposition of the sophisticated means enhancement. The district court did not err in applying the enhancement in this case.

Peterson's remaining claim is that the district court erred in failing to provide any justification for the eleven discretionary supervised release conditions relating them to the applicable § 3553(a) factors in the sentencing hearing. He alleges that the court merely read the discretionary conditions into the record, and the failure to link the conditions as a whole to the § 3553(a) factors and provide findings was a procedural error necessitating resentencing. See *United States v. Aslan*, 644 F.3d 526, 531 (7th Cir. 2011)("[p]rocedural errors include, among other things, failing to calculate or incorrectly calculating the guidelines range, treating the guidelines as mandatory, failing to consider the § 3553(a) factors, or failing to explain adequately the chosen sentence, including an explanation for any deviation from the guidelines range") citing *Gall v. United States*, 552 U.S. 38 (2007).

Following the acceptance of Peterson's guilty plea, the Presentence Investigation Report ("PSR") was prepared and distributed to the parties. Defense counsel filed two documents in response to the PSR, *Defendant Peterson's Objections to the Government's Version of the Offense and the PSR* challenging certain portions of the PSR, and *Defendant Peterson's Sentencing Recommendation* arguing for a sentence of only one day time served and probation with home confinement, and addressing the appropriate application of the § 3553(a) factors. Peterson did not challenge the proposed supervised release conditions in either document, nor did he argue that the conditions were without justification. In the district court, once again no objection to the supervised release con-

ditions was raised. The district court judge read each discretionary condition into the record, reading directly from the PSR and even citing the pages as he went. The judge did not discuss the § 3553(a) factors at that time, but in the sentencing hearing he explicitly adopted the PSR and its findings. The PSR recommended the conditions which the district court imposed, and included a statement of reasons identifying the § 3553(a) factors which supported imposition of the conditions. The PSR explained that the conditions were recommended to comport with § 3553(a) concerns of affording adequate deterrence, protecting the public from further crimes, and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. It additionally declared that the conditions were necessary to keep the probation officer informed of Peterson's conduct, condition and compliance, to target interventions to, and factors that are proven to, reduce the risk of re-offending. Finally, the PSR declared that the conditions would assist the defendant to engage in responsible fiscal behavior while complying with the need to repay victims. The connection between those reasons and the conditions is obvious for many of the conditions, and the defendant acknowledges that most supervised release conditions can be justified. Whether one could argue that the reasons are inadequate to justify a particular discretionary condition is not before us, because as will be seen Peterson's challenge is broader than that.

Immediately after identifying the supervised release conditions, the district court sequentially asked the probation officer, each of Peterson's attorneys, and the prosecutor the following question: "from your standpoint, have I missed anything?" Sent. Tr. Doc. 63 at 38–39. When individ-

ually queried, each one responded no. Nevertheless, Peterson now argues that the court in fact missed something – an articulation of its application of the § 3553(a) factors in imposing the supervised release conditions. In general, when a defendant fails to raise an objection at trial despite being provided the opportunity to do so, we review the claim only for plain error. Under that standard, the defendant must demonstrate an error that is clear or obvious, which affected the defendant's substantial rights, and which seriously impugns the fairness, integrity or public reputation of the judicial proceeding. *United States v. Bickart*, 825 F.3d 832, 837 (7th Cir. 2016). A defendant has the burden to show that the standard is met, see *United States v. Vonn*, 535 U.S. 55, 62–63 (2002) and Peterson did not argue injury at all in his opening brief. See *United States v. Lewis*, 823 F.3d 1075, 1083–84 (7th Cir. 2016) (noting that even if the responses to the court's inquiries were not enough to demonstrate waiver, the failure to object in response to an invitation would amount to forfeiture and "[w]here the issue is the sufficiency of an explanation or findings, a meager explanation of an otherwise permissible decision does not call into question the fairness, integrity, or public reputation of the proceedings.")[1]

Regardless of whether we apply the plain error standard based on the failure to object below, or even the harmless

---

[1] The government initially argued for the application of the plain error standard, and stated in its brief to this court that it did not believe that the response at the close of sentencing as to whether the court missed anything was sufficient to constitute waiver. It has since asserted that a recent opinion in this circuit, *United States v. Gumila*, 879 F.3d 831, 837–38 (7th Cir. 2018), supports a conclusion that Peterson waived the claim entirely. As Peterson's claim fails in any event, we decline to consider that argument.

error standard advocated by Peterson in reliance on *United States v. Poulin*, 809 F.3d 924, 930 (7th Cir. 2016), the claim must fail. The only claim here is the narrow one of whether the district court committed a procedural error in failing to provide its reasons under § 3553(a) for imposing the discretionary conditions. This argument is premised on the court's failure to state its reasons at the sentencing hearing. Peterson is correct that the district court did not state its reasons for the conditions in its colloquy at sentencing in which it set forth those conditions. The better practice would have been to do so. But the district court incorporated the discretionary conditions directly from the PSR, explicitly adopting the PSR and its reasoning at that sentencing hearing, and the PSR identified the § 3553(a) factors upon which the determination was made. That is sufficient to overcome the claim of procedural error in this case. The procedural requirement that the court consider the § 3553(a) factors in imposing the discretionary conditions, and communicate that determination, is met in the adoption of the PSR which supplies that reasoning. See *United States v. Salem*, 597 F.3d 877, 886–87 (7th Cir. 2010); *United States v. Burke*, 148 F.3d 832, 835 (7th Cir. 1998) ("[t]o adopt the PSR *is* to make factual findings."). Although we would urge the probation office and the district court to strive for more detailed and less rote findings and explanation of its reasoning as to the § 3553(a) factors, we have recognized the need to consider the context and practical realities of sentencing hearings in determining whether the procedural requirements are met. *United States v. Reed*, 859 F.3d 468, 472 (7th Cir. 2017). Where the parties present no objection after being provided an opportunity, we have determined that the procedural requirement can be satisfied with a more general and less detailed explanation

of reasoning. See *Bickart*, 825 F.3d at 839 (sufficient where the district court tied the conditions to the § 3553(a) factors and engaged in a more detailed exposition as to the two conditions to which the defendant objected); *United States v. Pietkiewicz*, 712 F.3d 1057, 1061 (7th Cir. 2013) ("[t]he amount of explanation required from the district court varies with the circumstances."); *United States v Starko*, 735 F.3d 989, 992 (7th Cir. 2013) ("[c]ourts do not have to engage in a discourse of every single § 3553(a) factor; however, it is also the case that a rote statement that the judge considered all relevant factors will not always suffice") (internal quotations omitted).

Therefore, Peterson cannot demonstrate that the district court committed a procedural error in failing to identify the reasons and apply the § 3553(a) factors. The required procedures were met by adopting the reasons in the PSR. Whether the reasons in the PSR were sufficiently specific to justify any particular discretionary condition is not before us. This case does not involve any substantive challenge. In his opening brief, Peterson never claimed that the reasons provided in the PSR and adopted by the district court were insufficient to support a particular discretionary condition. In fact, his opening brief in this case does not even list the discretionary conditions imposed by the court at all, let alone argue as to the inapplicability of the § 3553(a) factors to any particular discretionary condition. We hold only that here, where the defendant had knowledge of the conditions and the reasons in the PSR prior to sentence, and an opportunity to object to those conditions before and at sentencing but raises no claims related to any specific supervised release condition, the court's adoption of those unchallenged condi-

tions as well as the reasons in the PSR were sufficient to satisfy the procedural requirements.

The judgment and sentence are AFFIRMED.