In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 18-2608

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

IZABELA GAWRON,

*Defendant-Appellant*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 CR 188-8 — **John Z. Lee**, *Judge*.

———————————

ARGUED JUNE 12, 2019 — DECIDED JULY 3, 2019

———————————

Before WOOD, *Chief Judge*, and BARRETT and ST. EVE, *Circuit Judges*.

WOOD, *Chief Judge*. Izabela Gawron is a citizen of Poland, but she has lived in the United States for the last 17 years. She became mixed up in a complex scheme that landed her in federal court facing charges of wire fraud. Once there, she pleaded guilty to one count and was sentenced to 12 months and one day in prison, and two years of supervised release. Her appeal focuses on the latter part of the sentence: she

contends that the district court erred by imposing *any* term of supervised release, because she is likely to be deported after her imprisonment. She also argues that the supervised-release condition confining her to the district where she is being supervised is flawed because the condition contains no scienter requirement. Finally, she asserts that the court's written judgment conflicts with its oral pronouncement of this condition.

While we find that Gawron's first two arguments lack merit, her argument about scienter would have warranted relief if she had properly preserved it. As for the third, we agree with both parties that the written judgment must be amended to conform to the court's oral pronouncement.

## I

Gawron and her husband, Kazimierz Motyka, were two members of a credit-card fraud scheme. They provided their personal information to another person, who then misrepresented their income to obtain credit cards in their names. Equipped with the cards, Gawron and Motyka then made purchases (including two luxury cars) without intending to pay the credit-card bills. They created two new corporations with a mobile payment processing terminal and swiped other participants' credit cards through the terminal. When they could not repay their debts, they declared bankruptcy. Both were indicted, and Gawron eventually pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343.

Using the 2016 edition of the Sentencing Guidelines, which was effective from November 1, 2016, to November 1, 2018, the Probation Office prepared a presentence investigation report. It calculated a Guidelines range of one to three years of supervised release but added that the court

"ordinarily" should not impose supervision on a defendant who would likely be removed from the country after her release from prison. U.S.S.G. § 5D1.1(c) cmt. n.5. The PSR also recommended a discretionary condition prohibiting Gawron from leaving the "jurisdiction" where she is being supervised without permission. Gawron objected to the PSR and to two conditions of supervised release, but she did not single out either the general imposition of supervision or the condition prohibiting her from leaving the jurisdiction. In fact, after stating her two objections to conditions of supervision, she represented that she "does not object to the remaining conditions."

At the sentencing hearing, Gawron reiterated her two objections. Again, she did not take the position that supervised release should be skipped because of her likely removal, nor did she contest the condition restricting her movement. When asked by the court about the likelihood of deportation, Gawron's counsel responded that immigration proceedings had started and that her deportation was not a matter of "if," but "when." When the court asked if Gawron had any additional objections to the term of supervision or to the sentence, Gawron's counsel stated that there were no issues that needed to be addressed.

As we noted earlier, the court imposed a prison sentence of 12 months and one day (below the lower limit recommended by the Guidelines), along with a two-year term of supervision. It explained that it chose to include supervision because of Gawron's need to reintegrate into society upon release if she was not deported after her incarceration. The court added that the conditions of supervision would require Gawron to secure employment, regain financial stability, and pay restitution. It acknowledged that Gawron's children

would face significant difficulties if both parents were incarcerated at the same time, and so the court granted Gawron's request to delay reporting to prison until Motyka's release. In the meantime, Gawron would be subject to the conditions of her pretrial supervision.

When reading aloud the supervised-release conditions, the district court stated:

> Defendant shall remain within the jurisdiction where defendant is being supervised, unless granted permission to leave by the Court or the probation officer. By jurisdiction I mean the federal judicial district in which defendant is being supervised, such as the Northern District of Illinois.

The written judgment, however, omitted the critical last sentence, and thus does not clarify that "jurisdiction" refers to the federal judicial district in which the defendant is being supervised.

After listing Gawron's supervised-release conditions, the court asked:

> Do you have any legal objection to the sentence I propose or request any further elaboration of my reasons under Section 3553(a) as to the term of imprisonment or the condition[s] of supervised release?

Gawron's counsel replied, "No, your Honor."

## II

### A

Gawron now argues that the district court did not adequately support its decision to impose a term of supervised release. But on this record, that argument comes too late. She

never suggested to the district court that supervised release was categorically inappropriate for someone facing likely removal; worse, she specifically declined the court's invitation to expand upon its reasoning for the supervised-release component of the judgment. This is the stuff of waiver. *United States v. Lewis*, 823 F.3d 1075, 1083 (7th Cir. 2016) (finding waiver established when "the judge asked specifically about the extent of her explanations of the sentence in general and supervised release in particular" and counsel raised no objections); see also *United States v. Bloch*, 825 F.3d 862, 873–74 (7th Cir. 2016); *United States v. Gabriel*, 831 F.3d 811, 814 (7th Cir. 2016).

Gawron had both notice of the conditions and an opportunity to object. At the sentencing hearing, the district court confirmed with Gawron that she had reviewed the PSR, which recommended imposing supervised release. Gawron's position paper on her conditions of supervised release mentioned that the court "ordinarily" should not impose a term of supervision, but it made no argument on that point. Instead, Gawron challenged only the imposition of specific recommended conditions. At sentencing, when the court asked counsel if he wished to request a more detailed explanation of each of the supervised-release conditions, counsel said he would "waive" that right. Before pronouncing the sentence, the court again asked if counsel had any objection to the proposed sentence or if he wanted further elaboration of the court's weighing of the factors spelled out in 18 U.S.C. § 3553(a). Gawron's counsel answered with a flat "no." Those actions add up to waiver. See *Lewis*, 823 F.3d at 1083; *Bloch*, 825 F.3d at 873–74; *Gabriel*, 831 F.3d at 814.

The only thing that complicates our analysis is the fact that, despite this record, the government never mentioned waiver in its briefs on appeal. Indeed, the government does not even contend that the issue was forfeited; it states only that we should review *de novo* whether the district court committed procedural error at sentencing. *United States v. Griffith*, 913 F.3d 683, 687 (7th Cir. 2019). Ordinarily, we would conclude that the government has waived the waiver defense. *United States v. Tyson*, 863 F.3d 597, 599 (7th Cir. 2017).

Despite the fact that both parties believe that the government's failure to raise waiver or forfeiture means that we are looking at a procedural point that should be reviewed *de novo*, see *United States v. Poulin*, 809 F.3d 924, 930 (7th Cir. 2016), we are not so sure. We can notice a forfeiture even if the government has let it slip, and we choose to do so in this case. A procedural error may require remand unless the government can establish that the error was harmless. *United States v. Olano*, 507 U.S. 725, 731–37 (1993); *United States v. Peterson*, 891 F.3d 296, 300–01 (7th Cir. 2018); *Poulin*, 809 F.3d at 930. But when the argument has been forfeited, the rules are different. *United States v. Wagner*, 872 F.3d 535, 540 (7th Cir. 2017). And the forfeiture here is unmistakable: Gawron never argued that the court should *not* impose any supervised release. Her single, undeveloped reference in her sentencing memorandum to the presumption that "ordinarily" supervised release is not imposed when the defendant is deportable falls far short of an argument that supervised release would be erroneous for her. Immigration proceedings do not always proceed like clockwork (to say the least), and so the district court's reluctance to treat removal as a done deal was prudent.

Even if supervised release is generally permissible, there is more that must be done. The district court must adequately justify both the length of supervised release and the conditions it imposes. *United States v. Bickart*, 825 F.3d 832, 839 (7th Cir. 2016) (citations omitted). Gawron argues that the district court fell short in both those respects.

Her argument has some heft: she is correct that the Guidelines recommend against imposing supervised release in this situation. U.S.S.G. § 5D1.1(c) & cmt. n.5 (2016). The Sentencing Commission notes that if a deported defendant returns to the United States legally, supervised release is unnecessary, U.S.S.G. § 5D1.1(c) cmt. n.5 (2016); if a deported defendant returns illegally, then a new prosecution would be preferable, *id.*; and if the defendant never returns, the case would likely be inactivated, and so supervised release would be unnecessary in the first place. See FEDERAL OFFENDERS SENTENCED TO SUPERVISED RELEASE, UNITED STATES SENTENCING COMMISSION 64–65 (2010). We too have noted that the Sentencing Commission takes the position that imposing supervised release on a deportable defendant is both "unnecessary and undesirable." *United States v. Zamudio*, 718 F.3d 989, 991 (7th Cir. 2013).

Yet the Guidelines do not advise that supervised release is never a good idea. The Application Note to U.S.S.G. § 5D1.1(c) (2016) instructs courts to consider imposing supervised release on a removable defendant "*if* the court determines that it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." § 5D1.1(c) cmt. n.5 (2016) (emphasis added).

Noting that supervised release is not statutorily required for her crime, see 18 U.S.C. § 1343, Gawron complains that the district court did not explain why it would provide an "added

measure of deterrence and protection" for her. U.S.S.G.
§ 5D1.1(c) cmt. n.5 (2016). But once again, whatever deficien-
cies exist in the record are the result of her own actions. The
district court asked her if she had had an opportunity to re-
view the PSR with her attorney, and it methodically reviewed
the PSR section-by-section with both parties, stopping to in-
vite objection. The PSR explicitly states that the supervised-
release conditions are recommended in part to "afford[] ade-
quate deterrence to criminal conduct" and to "protect[] the
public from further crimes of the defendant." Under *Peterson*,
adopting the PSR's reasoning satisfies the procedural require-
ment to consider the § 3553(a) factors in imposing supervised
release. 891 F.3d at 301. But that was not all the court did at
sentencing. It expressly noted the possibility that Gawron
would not be deported immediately after her release from
prison. Given this possibility, the court stated that it was im-
posing a two-year term based on "all factors discussed as well
as the other factors set forth in 18 U.S.C. § 3553(a)" and "in
light of the need for the defendants to reintegrate into society
once they are released from custody." "Where the parties pre-
sent no objection after being provided an opportunity … the
procedural requirement can be satisfied with a more general
and less detailed explanation of reasoning." *Id.* at 302; see also
*Bickart*, 825 F.3d at 839. We are satisfied that this explanation
was procedurally sufficient.

B

Gawron next argues that the supervised-release condition
forbidding her from leaving the jurisdiction without permis-
sion (Discretionary Condition #14) is inconsistent with
U.S.S.G. § 5D1.3(c)(3) because it omits a scienter component.
Here, too, Gawron did not raise this argument in the district

court. On appeal, both parties recognize that this argument was not raised and argue that the forfeiture should lead to review for plain error. We agree.

The government correctly notes that we have said more than once that Discretionary Condition #14 does not have to include a scienter component. *Poulin*, 809 F.3d at 931; see also *United States v. Givens*, 875 F.3d 387, 390 (7th Cir. 2017). We clarified in *Poulin* that including a scienter component, while recommended, is not mandatory. 809 F.3d at 931. *Poulin* and *Givens*, however, are not the end of the story.

The decision in *Poulin* was based upon the 2012 edition of the Guidelines, which did not include a scienter component in the travel restriction. 809 F.3d at 930; U.S.S.G. § 5D1.3(c)(1) (2012). The decision in *Givens* was based upon the 2015 edition of the Guidelines, which also did not include a scienter component in the travel restriction. 875 F.3d at 387; U.S.S.G. § 5D1.3(c)(1) (2015). But then the Guidelines changed. The district court in Gawron's case used the 2016 Guidelines, which added the word "knowingly" to the travel restriction. See U.S.S.G. § 5D1.3(c)(3) (2016). The pertinent statute requires that a supervised-release condition be consistent with the Sentencing Commission's policy statements. See 18 U.S.C. § 3583(d)(3). Since 2016, the policy statement has included the term "knowingly." The Guidelines must be interpreted using "the plain meaning of the words in the text." *United States v. Hill*, 645 F.3d 900, 907–08 (7th Cir. 2011). There is no plainer way to read "knowingly" than as a scienter component. It is not clear, therefore, that the results in our earlier decisions would have been the same had the 2016 policy statements been in effect.

We have not squarely confronted this change in the Guide-
lines language in the past. We did, however, applaud the use
of the word "knowingly" in *United States v. Johnson*, 911 F.3d
849, 853–54 (7th Cir. 2018). Now that Gawron has raised the
point, however, more needs to be said and done. Going for-
ward, the district courts and Probation Offices would be well
advised to ensure that any forms they use reflect the 2016
amendment. For the present case, we assume for the sake of
argument that Gawron has pointed to an error. But Gawron
can prevail only if she can show that this assumed error affects
her substantial rights. That, we conclude, she cannot do. (We
take no position on the question whether the district court
might wish to modify the conditions of her release to include
this scienter requirement, should her case go that far.)
Gawron argues only that the absence of a scienter require-
ment will make it easier to find a violation of this condition of
supervised release; that in turn, she says, will affect her "sub-
stantial right to remain free." Especially in her case, however,
the possibility of being charged with a violation for unwit-
tingly leaving the judicial district is speculative at best. See
*United States v. Seifer*, 800 F.3d 328, 330 (7th Cir. 2015). It falls
short of the specific showing of prejudice that the plain-error
standard demands. See *Olano*, 507 U.S. at 735; *United States v.
Burns*, 843 F.3d 679, 697 (7th Cir. 2016) (plain-error review re-
quires a "specific showing of prejudice, not just speculation")
(citations omitted).

## C

Gawron's final point is uncontroversial: she asks that the
condition in the written judgment be corrected to include the
definition of "jurisdiction" as "federal judicial district," thus
conforming to the court's oral pronouncement from the

bench. The government agrees that the condition as stated orally is proper and so it must be given effect.

We therefore modify the judgment to conform to the court's oral pronouncement defining the term "jurisdiction" as "judicial district," see *United States v. Smith*, 906 F.3d 645, 651 (7th Cir. 2018), and AFFIRM it as modified.